(90 South. 417)

No. 23896.

STATE ex rel. SONNENBERG v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.

(June 30, 1921. On Rehearing, Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations ⛭⟹218(6)—Position of civil service employee held not abolished in good faith.**

The board of commissioners of the port of New Orleans did not abolish the position of the relator in good faith and without intent to employ another person in his place where the board, at the first meeting after action brought for reinstatement, ostensibly resolved to abolish the position, but merely changed the name of the position held by relator's successor, whose duties and salary were the same, under Laws Ex. Sess. 1915, No. 15, § 5.

2. **Municipal corporations ⛭⟹216(1) — Employee of board of commissioners of the port of New Orleans held protected by civil service statute.**

Time inspector, employed by the board of commissioners of the port of New Orleans after taking a civil service examination, whose employment was in the cotton warehouse and at the grain elevator, as well as on the wharves and docks and on the industrial canal, was protected by Laws Ex. Sess. 1915, No. 15, § 5, which expressly refers to employees "in such warehouses and other structures in aid of commerce as may be erected and operated by the board of commissioners of the port of New Orleans under the provisions of article 322 of the Constitution."

3. **Mandamus ⛭⟹187(4) — That demand for salary was made in proceeding to compel reinstatement in position under the civil service not available on appeal where defendant pleaded to merits.**

That one seeking to be reinstated in a position from which he was wrongfully discharged, under Laws Ex. Sess. 1915, No. 15, § 5, relating to employment of persons under the civil service, was allowed to cumulate his demand for salary with his demand for reinstatement, is not available on appeal in view of Code Prac. arts. 148 and 149, where defendant did not avail itself of privilege accorded by article 152 to refuse to plead to the merits, and did not insist upon a trial of the exception before taking up the case on its merits.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Application by the State, on the relation of Joseph Sonnenberg, for a writ of mandamus against the Board of Commissioners of the Port of New Orleans. From judgment granting the writ, defendant appeals. Affirmed.

James Wilkinson, of New Orleans, for appellant.

John J. Reilley, of New Orleans, for appellee.

O'NIELL, J. Defendant appeals from a judgment making a writ of mandamus peremptory, commanding defendant to reinstate relator in the position of assistant time inspector, from which he was discharged, and condemning defendant to pay relator's salary from the time of his discharge.

Relator's complaint is that his discharge was a violation of the Civil Service Law (Act 15 of the Extra Session of 1915), which declares that all persons employed by the board of commissioners of the port of New Orleans, as a result of an examination by the board of examiners created by the statute, "shall hold their offices or employment during their good behavior, and shall only be removed on charges preferred against

them to said board of commissioners, and which shall be proven contradictorily against them to the satisfaction of said board." Section 5.

[1] The question whether the board of commissioners might, without violating the civil service statute, have abolished the position or employment held by relator, for the purpose of economy, in good faith, and without intending to employ another person in relator's place, is not presented in this case. Without regard for the Civil Service Law, and without cause for complaint, the board discharged relator and employed another man in his place, to perform the same services, at the same salary. The position or employment had not been, and was not then, abolished. On the next day after the board was cited to answer this suit, the board held a meeting and, ostensibly, resolved to abolish the position or employment theretofore held by relator, and on the following day, the treasurer and assistant secretary of the board addressed a letter to relator, as follows, viz.:

"I am instructed by the board of commissioners to say that an error has been committed in your recent discharge by the board.

"However, last evening the board, as a matter of economy, abolished the position now held by you. I am instructed by the president to draw a voucher for your full pay up to this morning, and will be pleased to have you call at this office and receive same.

"Inasmuch as the above error was committed by the board, please have your attorney notify the board as to the amount of the costs in your present suit, which costs will be reimbursed you."

Relator's employment was in the time inspection department, which consisted of a chief time inspector, under salary of $225 a month, and three assistant time inspectors, each under salary of $150 a month. Relator was one of the assistant inspectors, and was called senior time inspector. His duty was to see that the other employees of the board actually put in the time for which they were given credit by the timekeepers, and thus to prevent fraud or error.

It is claimed by defendant that the position of chief time inspector had been abolished, and that the board had intended to abolish also the positions of the three other members of that department. It is admitted however, that their positions had not been abolished. The record of the employment of relator's successor, John H. Strobel, shows that he was employed in the same position from which relator was discharged, viz.:

"John H. Strobel, time inspector, executive office, $150.00 per month, vice J. Sonnenberg."

In fact, when Strobel was employed, relator was requested by an officer of the board to instruct Strobel, and did instruct him, in the duties which he was to perform. The title as well as the duties, of the position remained the same until the meeting of the board on the next day after citation was served in this suit. The board then, ostensibly, abolished the positions of the assistant time inspectors, and created in their place positions called "detectives." The only change in Strobel's position was that he was thereafter called a "detective," instead of a "time inspector." His salary and duties remained the same.

[2] It is contended that relator was not protected by the civil service statute at the time of his discharge, because his duties demanded more of his time at the navigation canal and on the wharves and docks than in the cotton warehouse, at the grain elevator, or at the coal tipple. It is contended that the employees on the navigation canal and on the wharves and docks are not protected by the Civil Service Law, which expressly refers only to employees "in such warehouses and other structures in aid of commerce as may be erected and operated

by the board of commissioners of the port of New Orleans under the provisions of article 322 of the Constitution." It is argued that the navigation canal, or industrial canal, was not constructed under, and is not operated under, the provisions of article 322. of the Constitution. It is not necessary to decide whether the civil service statute protects employees on the industrial canal or on the docks or wharves, as well as those in the cotton warehouse and at the grain elevator. Relator's employment was in the cotton warehouse and at the grain elevator, as well as on the wharves and docks and on the industrial canal; and he was employed in consequence of his passing the civil service examination, as required by the statute. The following allegations contained in relator's petition are admitted in defendant's answer, without any qualification, viz.: That, at the time of relator's discharge he was employed in the time inspection department, at a salary of $150 a month; that his duties required him to check all time records and pay rolls of the other employees in the warehouses and other structures erected by the board of commissioners of the port of New Orleans, and those in course of construction on the river front; that he had submitted himself for civil service examination as required by law, and made 100 per cent. in his examination; that he was therefore placed upon the eligible register of candidates for employment by the board; and that, thereafter, at a session of the board, he was confirmed as a civil service employee of the board, under the provisions of Act 15 of the Extra Session of 1915, and article 322 of the Constitution of this state. There was no material change made in his position or employment thereafter, and the action of the board in pretending to abolish the position immediately after being cited to answer this suit was a recognition of the fact that plaintiff was protected by the civil service statute at the time of his discharge.

[3] It is argued on behalf of appellant that relator should not have been allowed to cumulate his demand for his salary with his demand to be reinstated in the position from which he was discharged. Preceding the answer to this suit, and in the same document, defendant took exception to the cumulation of the two demands in the one suit. But defendant did not request a separate ruling upon the exception. On the contrary, having answered the allegations of the petition, defendant prayed merely that the exception and other defenses should be maintained, etc. Articles 148 and 149 of the Code of Practice declare that two or more demands may be cumulated in the same action, provided one is not contrary to or does not preclude another. And article 152 declares that, if contrary or inconsistent demands have been cumulated in the same action, the defendant's right is merely to refuse to plead to the merits of the case until the plaintiff shall have chosen which one of the inconsistent demands he will proceed with. As the defendant board did not avail itself of the privilege accorded by article 152 of the Code of Practice, we assume that the board's attorney was not insistent in his contention that the demands were inconsistent. Our opinion is that they are not inconsistent.

The judgment appealed from is affirmed, at appellant's cost.

## On Rehearing.

OVERTON, J. A re-examination of this case satisfies us with the correctness of our former opinion and decree.

It is therefore ordered, adjudged, and decreed that said opinion and decree be reinstated and made the judgment of this court.