(96 South. 539)

No. 25289.

STATE ex rel. EXNICIOS v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.

(April 30, 1923.)

*(Syllabus by Editorial Staff.)*

1. Mandamus ⟨⟩143(2)—Laches of discharged employee induced by port authorities held not to bar suit for reinstatement and salary.

Where board of commissioners of Port of New Orleans, through its president and superintendent, held out to discharged employee expectation of reinstatement or of satisfactory adjustment of his claim and advised him to de-

153 LA.—23

fer suing until decision in suit brought by another discharged employee, his suit for reinstatement and salary was not barred by laches.

2. Municipal corporations ⟨⟩218(6)—Attempted abolition of position from which plaintiff removed held ineffectual.

Where position from which relator was dismissed by board of commissioners of port of New Orleans was filled by appointment of successor with the same title, subsequent attempt to abolish the position by merely changing its name *held* not to affect relator's rights.

3. Mandamus ⟨⟩14(1)—Failure to demand reinstatement to office before action immaterial when it would not have been granted.

When board of commissioners of port of New Orleans had no intention of reinstating employee illegally discharged, if demand had been made, demand would have been vain and useless formality, and failure to make it did not defeat suit for reinstatement and recovery of salary.

4. Mandamus ⟨⟩16(2)—Abolition of position held to defeat discharged employee's right to compel reinstatement.

Under Act No. 101 of 1920, § 1, authorizing commissioners of port of New Orleans to fix number of harbor police and removing them from civil service regulations, where board of commissioners, after passage thereof, abolished position from which relator was illegally removed and assigned its duties to harbor patrol, relator could not be reinstated on mandamus.

5. Municipal corporations ⟨⟩220(6) — Employee illegally discharged entitled to salary until date position was abolished.

Though employee of board of commissioners of port of New Orleans cannot be reinstated in position from which illegally removed because of its abolition, he is entitled to recover salary of which he was illegally deprived to date position was abolished.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Mandamus by the State, on relation of Samuel R. Exnicios, against the Board of Commissioners of the Port of New Orleans. From a judgment for relator, defendant appeals. Amended and affirmed.

Harold A. Moise and Arthur B. Hammond, both of New Orleans, for appellant.

John J. Reilley, of New Orleans, for appellee.

LAND, J. This is a mandamus proceeding in which relator seeks to compel the commissioners of the port of New Orleans to rescind their former action in dismissing relator from his office in the time inspection department, inspection force, created by said board, and to condemn said board to pay to relator $150 per month from the first day of November, 1919, subject to a credit of $590, until such time as said board shall reinstate him in his said office.

Relator avers that the facts in this case are identical with the facts in the Sonnenberg Case, 149 La. 1095, 90 South. 417, decided by this court; that he was engaged in discharging the same duties that the said Sonnenberg was engaged in discharging; that he was employed in the same department as the said Sonnenberg was employed; that he was earning the same salary that the said Sonnenberg was earning; that he took the civil service examination on the same day that the said Sonnenberg took his examination; that he was confirmed as a civil service employee; and that he was dismissed on the same day and in the same manner as the said Sonnenberg was dismissed from office.

The judgment of this court in the Sonnenberg Case affirmed the judgment of the lower court, commanding respondent to reinstate relator in the position of assistant time inspector, from which he was discharged, and condemning respondent to pay relator's salary from the time of his discharge.

The facts in this case and in the Sonnenberg Case are similar.

New issues, however, are presented in the present suit by the answer of respondent board, in which it is alleged:

"That relator has been guilty of laches by not bringing timely proceedings, having taken two years, three months and fourteen days before bringing this suit, and that, in the meantime, a special act of the Legislature, No. 101 of 1920, has become effective, which authorized your respondent board to organize a police department and that said patrolmen on said force are not under civil service."

[1] The issue as to laches on the part of relator in bringing his suit is, in our opinion, met fully by the testimony in the case, showing that the superintendent of the dock board advised relator to defer bringing his suit, until after the decision in the Sonnenberg Case, as said decision would be necessarily determinative of relator's case, as their causes of action were founded upon similar facts. Relator, immediately after he was dismissed, also went to see the president of respondent board, who said to him, "You drop in later, and I suppose everything will be all right." Relator testifies that—

"On several other times, I went to the Marine Oil Company and saw him. He told me he supposed everything would be all right." Ev. 27.

Respondent board having held out to relator through its president and its superintendent the expectation of reinstatement, or of some satisfactory adjustment of his claim, it would be against all equitable considerations for this court to hearken to a plea of laches arising under such circumstances, and occasioned by the statements made to relator by the president and superintendent of respondent board.

[2] The Sonnenberg Case was filed December 1, 1919, before the passage of Act 101 of 1920. While respondent board notified Sonnenberg that said board had abolished his position on November 20, 1919, we stated in that case:

"It is claimed by defendant that the position of chief time inspector had been abolished, and that the board had intended to abolish also the position of the three other members of that department. It is admitted however, that their positions had not been abolished. The record of the employment of relator's successor, John H. Strobel, shows that he was employed in the same position from which relator was discharged, viz.: 'John H. Strobel, time inspector,

executive office, $150.00 per month, vice J. Sonnenberg.'

"In fact, when Strobel was employed, relator was requested by an officer of the board to instruct Strobel, and did instruct him, in the duties which he was to perform."

When relator was dismissed from his position, October 31, 1919, his place was filled November 1, 1919, by a successor, and under the same circumstances detailed in the opinion in the Sonnenberg Case.

Relator's position, therefore, was not abolished at all by respondent board by its action on November 20, 1919.

[3] This state of facts affords clear proof that respondent board entertained, in fact, not the slightest intention of reinstating relator, had such demand been made by him. To have made, then, a demand upon respondent board for reinstatement under such conditions, would have been a vain and useless formality on the part of relator.

The delay in filing his suit did not, therefore, prejudice in any way respondent board, whose liability in this case has arisen, not from any laches upon the part of relator, but from the illegal act of respondent board itself in dismissing relator from his position, in violation of the provisions of Act 15 of the extra session of the Legislature of the year 1915.

[4] The position of the men who succeeded Sonnenberg and relator was abolished by respondent board April 1, 1921, after the passage of Act 101 of the year 1920.

Section 1 of this act confers authority upon the commissioners of respondent board, "in their discretion, to appoint, fix salaries of and pay any port and harbor police; said police to consist of such numbers of men * * * as said board of commissioners shall, in their discretion, appoint as aforesaid."

The position held by relator under the time inspection department was not abolished until April 1, 1921, at which date a harbor patrol was organized by respondent board, under the provisions of Act 101 of 1920, and the duties of relator's position were assigned to appointees of the harbor patrol, who are removed from all civil service regulations by said act, their appointment being made, and their salaries fixed, in the discretion of respondent board.

It follows, then, that that part of relator's demand to be reinstated in his former position by respondent board must necessarily be denied and rejected.

[5] Relator is entitled, however, to recover his salary, at the rate of $150 per month, from November 1, 1919, to April 1, 1921, subject to a credit of $590, as he has been illegally deprived of said salary by the action of respondent board during that period.

The judgment appealed from is therefore amended by rejecting the demand of relator for reinstatement to his position, and said judgment is also further amended, so as to decree that relator recover of respondent board his salary, at the rate of $150 per month, from November 1, 1919, to March 31, 1921, inclusive, subject to a credit of $590, and it is ordered that said judgment, as amended, be affirmed. Relator to pay the costs of appeal.