(107 So. 476)

No. 25759.

JONES v. CITY OF NEW ORLEANS et al.

(Feb. 1, 1926.   Rehearing Denied March 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations** ⬅198(2)—**Rule of fire department, giving right to complain ot grievances to higher authority, held mandatory (Act No. 58 of 1910; Act No. 159 of 1912, §§ 17, 70; Const. 1921, art. 1, § 5).**

Rule of fire department of New Orleans, organized under Act No. 58 of 1910, confirmed by Act No. 159 of 1912, §§ 17, 70, giving aggrieved employees right to complain to higher officers, is mandatory, in view of Const. 1921, art. 1, § 5; such right being one of attributes of citizenship under a free government.

2. **Municipal corporations** ⬅198(3)—**Fireman may not be tried and dismissed for offense not specified in charge (Act No. 58 of 1910, § 5).**

Where, under statute, written charges were preferred against fireman of New Orleans fire department for insubordination in complaining to higher officers, trial and dismissal on charge of keeping aloof from other members of fire company, and holding secret conversations, was not authorized under Act No. 58 of 1910, § 5.

3. **Municipal corporations** ⬅198(2)—**Rule authorizing discharge of firemen for intentionally making false reports held not to authorize discharge for ill-founded complaints.**

Rule of fire department of New Orleans that firemen may make complaint of grievances being mandatory, another rule, authorizing their discharge for intentionally making false reports will not be construed to authorize discharge, if complaints are held ill-founded.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Suit by George Jones against the City of New Orleans and others. From a judgment for defendants, plaintiff appeals. Reversed, and judgment ordered for plaintiff.

E. M. Stafford and Daniel Wendling, both of New Orleans, for appellant.

T. Semmes Walmsley, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, for appellees.

ST. PAUL, J. [1] The fire department of the city of New Orleans is organized under Act 58 of 1910, p. 93; confirmed, as to its general provisions, by sections 17 and 70 of Act 159 of 1912, pp. 253, 269, 294. It is governed by a "board of commissioners," composed of the mayor of said city, the commissioner of public safety and one other commissioner, selected by the commission council. Section 17 of Act 159 of 1912, p. 269. The executive officer thereof is the "chief engineer," who has "exclusive cognizance, control of and be [is] responsible for the government, administration, disposition and discipline of said fire department"; and, accordingly, the statute gives him "power and authority to make, adopt and enforce such rules and regulations and to do all such acts as he may from time to time deem necessary to effect a prompt and efficient exercise of all powers conferred by this act. * * *" And it is further provided that—

"Said chief engineer shall have power and he is authorized to adopt rules and regulations, after submission to and approval by the said board of commissioners * * * for the examination, hearing, investigation and determination of charges made and preferred against any officers, members or employees of the said fire department but no officers or members or employees of the said fire department, * * * shall be fined, suspended or removed from the fire department until written charges shall have been made or preferred against him or them, nor until such charges have been examined, heard or investigated, before the said chief engineer upon reasonable notice to such officer, member or employee * * * [with right of appeal and trial de novo before the Board of Commissioners]." Section 5 of Act 58 of 1910, pp. 97, 98.

### I.

The rules and regulations for the government of the fire department, "adopted by the chief engineer and approved by the board of

commissioners," provide that, when any member of the department shall feel aggrieved by any action of a superior officer, or of any other member of the department, he "shall report the same in writing to the chief engineer, through his proper officers." Rule 133.

This *giving* of the right to complain of grievances to *higher authority*, was wholly superfluous. That right is, and always has been, one of the attributes of citizenship under a free government. U. S. v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588. Hence the right to "apply to those vested with the powers of government for a redress of grievances by petition or remonstrance" is made one of constitutional guarantee in this state. Const. 1921, art. 1, § 5, p. 1.

Hence the rule of the fire department cannot be construed otherwise than as *mandatory* on the members of the department to make known their grievances in the interest of a better service.

## II.

[2] Plaintiff was a "pipeman" in engine company No. 5, and his immediate superior officer was Capt. Theo. Smith.

Rule 164 of the regulations aforesaid is directed against "making intentionally false reports, and circulating false rumors."

On February 10, 1922, plaintiff was charged by Capt. Smith with "violating rule 164; insubordination"; giving as "specification" for said charge the following:

"That the said pipeman George Jones *complained to Assistant Engineer Leveque*, that he was getting too many details, and also claims that he has not been treated like he should be,"

—the alleged insubordination having occurred on January 29, 1922. (Italics ours.)

## III.

Manifestly, where the law grants a right, it grants the *substance* of the thing granted, and not the mere *form* thereof, for it is not to be presumed that the law "*intended to ex-* *tend a barren right.*" State v. Hollingsworth, 106 So. 662, 160 La. 26, citing State v. Ferris, 16 La. Ann. 424. Hence, when the act of 1910 provided that no member of the department should be fined or suspended or removed until *written charges* shall have been made against him before the chief engineer, and heard after reasonable notice to the party charged, it followed that the law intended that the hearing should be upon the charge *as made*, and not upon some other and different alleged offense with which the party has *not* been charged, and of which he has *not* had notice, reasonable or other.

## IV.

Capt. Smith may have had (or thought he had) reason to be dissatisfied with plaintiff and two other members of his company who kept somewhat to themselves and aloof from the rest of the company, holding among themselves "secret" conversations, in which Callaghan, the lieutenant of company No. 5, overheard the names of Smith and Callaghan mentioned.

No charge was made against plaintiff as to this, although Callaghan threatened to do so. But the fact is, as abundantly appears from the testimony taken before the board of commissioners and before the lower court, that *this* was the matter on which plaintiff was *tried*, and *this* was the matter for which he was removed from the force; that the charge covered by the "specification" was a mere "bush to hang a rag on."

For, as to the matter covered by the "specification," the facts are briefly these:

Between January 13th and January 28th, plaintiff was detailed for special and extra work *six* (or prehaps *seven*) times, of which twice in one day, out of a total of *eight* such details in a company of 18 men. Now it may have been, and doubtless was, the *strict legal right* of the captain of the engine house to make these assignments for special and extra duty as he saw fit; but nevertheless plain-

tiff felt that he was getting somewhat more than his just share of special and extra work allotted to the company, and, accordingly, that he was not being treated as he should be by the captain, who had personally made at least *five* out of these six (or seven) special details; the other (one or two) having been made by the lieutenant.

Whereupon plaintiff made complaint to the chief engineer, and asked to be transferred to another company.

On January 29th the chief engineer sent Assistant Engineer Leveque to the engine house to investigate; and this is the account of what then occurred, as given by him before the board of commissioners, at a time when the facts were still fresh in his mind:

"I went over (to the engine house) and lined the men up, and this man Jones was on the end, and I said: 'What is the complaint you men have here?' This man said: 'Well, I ain't been treated right.' I said: 'In what way?' He said: 'Well, I come in, in the morning, and the captain don't tell me good morning.' I said: 'Oh, that's not right. You should salute your captain when you come in, and he would return it. * * * What else is the complaint?' He said: 'Well, I been getting too many details; I ain't been treated right by the captain.' I said: 'Can you substantiate that?' He said: 'Yes.' I said: 'All right, Jones, makes charges against this man, and prove where he is illtreating you, not treating you right.'"

No charges were ever made by plaintiff against Capt. Smith for *a very obvious reason*, as follows:

Capt. Smith testified before the court below:

" * * * So these three men, Ross, Jones and Bardeau, asked for a transfer. So then I asked the assistant engineer, would he give me the right to ask them for their reasons for a transfer, * * * and Jones says that he was getting too many details, and that I wasn't treating him right, *and then I told him I was going to prefer charges against him for criticizing my actions, because he was saying an untruth, making an unjust report.*" (Italics ours.)

Assistant Engineer Leveque testifies before the lower court that he reported to the chief

engineer that the three men wanted a transfer, and made a further investigation by order of the chief engineer; but—

"They (the men) still had the same statement to make; and the captain of the company (Smith) said he wanted to charge this man with insubordination. *He made charges and sent them in. The chief said the charges weren't drawn up right, to send it back for correction, to have the right rule that applies to the charge made on it.*" (Italics ours.)

So the charges were preferred in the form hereinabove set forth. And thereupon the chief engineer testified in the court below as follows:

"The assistant engineer reported that his (Jones') complaint was not well founded, and I ordered charges preferred against him for violating Rule 164, making a false report, and we tried him according to law; permitted him to have his witnesses, to cross-examine the witnesses, and make statements. After listening to the evidence of all the men in the house, I took the case under advisement, studied the thing up, and *I came to the conclusion that, for the good of the department, for the benefit of, the discipline in the department, we would be better off without Mr. Jones, and I dismissed him from the service.* He appealed the case to the board and the board sustained me."

And before the board his statement was substantially to the same effect; thus:

"There was dissension cropping up in that house. * * * *They were making complaints,* and we went there to see if they were well founded. · And I didn't think they were well founded, and I ordered charges made against them, this man and Bardeau. I tried them, and took this man's case under consideration and *investigated it, and found out that, in my judgment, he would be better off out of the fire department, for the good of the discipline of the department;* and I dismissed him. (Italics ours.)

And the trial before the board of commissioners *opened up* with the following testimony by Capt. Smith, all the rest of the testimony being along the same lines, to wit:

"Well, Pipeman Jones and several of his associates were trying to demoralize the company. Their action towards me wasn't satisfactory; and there was three of them always together, and they didn't associate with either platoon.

They dropped out of the coffee fund and the paper fund, and they wouldn't eat with the men. * * * They have a fund where they cook in the engine house. And they wouldn't associate with them at no time. During the winter, if these men were sitting around the stove, they would go outside and sit in the cold rather than sit with the other men, and they avoided these other men at all times. At no time did they associate with them, and they tried to intimidate them."

And upon this line of testimony being objected to, he said:

"I thought that had reference to these charges; what I said."

So that the sum and substance of the matter is that the plaintiff was *charged* with one alleged offense, set forth distinctly in the written charge, and was tried and dismissed for something entirely different and with which he had *not* been charged.

## V.

[3] Our conclusion is that the trial of plaintiff was therefore not in accord with the method prescribed by the statute; that he was charged with one alleged offense and found guilty of another. And in this we are all the more confirmed, (1) because the trial judge found, in his reasons for judgment, that plaintiff "was twice found guilty of insubordination," and (2) because it is impossible to construe rule 164, aforesaid, as meaning that, because a complaint (made in this instance, in pursuance of a *mandatory* rule of the board, and at the invitation of the chief engineer) is held not well founded, the complainant is subject to dismissal for "making intentionally false reports, and circulating false rumors," thus in effect depriving a party feeling aggrieved of all opportunity to apply for relief, unless at the risk and peril of being dismissed should he fail to obtain the relief sought, a condition which, as we said at the start, has no place under a free government.

The judgment should have been for plaintiff.

### Decree.

The judgment appealed from is therefore reversed, and it is now ordered that there be judgment in favor of plaintiff, George Jones, and against the defendants the city of New Orleans, the board of commissioners of the fire department of the city of New Orleans and John M. Evans, chief engineer of the said fire department, directing and commanding the said defendants, and each of them to reinstate the said plaintiff as a member of the fire department of the city of New Orleans as of date February 24, 1922, at such salary as he was then receiving, and at such additional salary as he might have been receiving on the day of judicial demand herein (August 5, 1922). And it is further ordered that said city of New Orleans and board of commissioners of the fire department do pay all costs of both courts.