(108 So. 417)

No. 26648.

STATE ex rel. REUTER v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.

(March 29, 1926. Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. Municipal corporations ⬅216(1)—Statute creating board to examine employees of board of commissioners, port of New Orleans, held inapplicable to persons exclusively engaged in construction of Industrial Canal (Act No. 15 of Extra Session of 1915; Const. 1913, art. 322, proposed by Act No. 133 of 1910; Act No. 244 of 1914).

Act No. 15 of Extra Session of 1915, creating board to examine applicants for employment in structures operated by board of commissioners of port of New Orleans, *held* not to apply to persons exclusively engaged in construction of Industrial Canal, since it must be construed in light of Const. 1913, art. 322, proposed by Act No. 133 of 1910, which, in view of Act No. 244 of 1914, only authorized board of commissioners to construct and operate public warehouses.

2. Statutes ⬅181(1).

In construing statutes, legislative intent is controlling.

3. Municipal corporations ⬅218(2) — Employee leaving classified service of commissioners, port of New Orleans, to work on Industrial Canal, without having name placed on eligible register, cannot compel reinstatement after dismissal (Act No. 15, Extra Sess. of 1915).

Civil service employee, who left classified service of board of commissioners of port of New Orleans to do work in construction of Industrial Canal, which was not classifiable, without having name placed on eligible register, cannot, under Act No. 15, Extra Sess. of 1915, compel board of commissioners to reinstate him in latter position after it had dismissed him.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Suit for mandamus under Act No. 15 of 1915 by the State, on the relation of J. T. Reuter, against the Board of Commissioners of the Port of New Orleans. Judgment for relator, and respondent appeals. Judgment avoided and reversed, and suit ordered dismissed.

Harold A. Moise, of New Orleans, for appellant.

Andrew B. Booth, Jr., of New Orleans, for appellee.

BRUNOT, J. Relator brought this suit under the provisions of Act No. 15 of Extra Session of 1915. A brief summary of the pleadings is all that is required for a proper understanding and decision of the case.

The petition alleges that relator was a civil service employee of the board of commissioners of the port of New Orleans; that, without cause or trial, he was summarily dismissed from the service of the board on February 15, 1920. The prayer of the petition is for a mandamus commanding the board of commissioners of the port of New Orleans to reinstate relator to the position from which he was dismissed, and for a judgment against the said board for salary at the rate of $225 per month from February 15, 1920, until the date of his reinstatement.

Respondents excepted to the petition upon the ground that it did not disclose a right or cause of action. They also pleaded the unconstitutionality of Act No. 15 of Extra Session of 1915. In the answer to the suit respondents admit that relator was, at one time, a civil service employee of respondent board, but they allege that he voluntarily left the classified service and accepted a position that does not come within the terms of Act No. 15 of Extra Session of 1915; that after leaving the classified service he did not place his name on the eligible register of civil service employees, as the rules of the board require, and he thereby forfeited any right he may have had as a civil service employee of respondent board.

The trial judge overruled respondents' exception of no right and no cause of action,

and their plea questioning the constitutionality of Act No. 15 of Extra Session of 1915, and rendered judgment in favor of relator and against the board of commissioners of the port of New Orleans to the extent and in the manner prayed for in the petition. From this judgment respondents appealed.

The record informs us that relator complied with the provisions of Act No. 15 of Extra Session of 1915. He passed the required examination, was recommended as an eligible for appointment to the board of commissioners of the port of New Orleans, was confirmed as pay roll clerk in the classified service, and was assigned to duty in the commodity warehouse at a salary of $150 per month. Some time after he became a civil service employee of the board, a vacancy occurred in the position of chief clerk to the superintendent of construction of the Industrial Canal. Relator sought that position and, through his own and the activities of his personal and political friends, he secured the employment and was transferred from the position of pay roll clerk in the classified service to the position of chief clerk to the superintendent of the Industrial Canal, at a salary of $225 per month. He was employed in this capacity when he was dismissed by the respondent board, and, in this suit, he is demanding reinstatement to that position and the salary he would have received as chief clerk to the superintendent of the Industrial Canal if he had been permitted to remain in that position and serve the board in that capacity.

The serious question which the case presents is whether Act No. 15 of Extra Session of 1915 applies to employees of the board of commissioners of the port who are engaged exclusively in the construction of the Industrial Canal.

Respondents contend that the work in which relator was engaged at the date of his dismissal was for an indeterminate time, and it was therefore not classifiable; that persons employed exclusively in the work of constructing the canal are not subjected to the examination and confirmation which Act No. 15 of Extra Session of 1915 and the rules of the board require; and that Act No. 15 of Extra Session of 1915 applies only to the classified service. It is also contended that the application of the provisions of the act are limited, by the constitutional authority which authorized its passage, to warehouses and similar structures in aid of the commerce of the port.

Respondents do not here urge the attack they made upon Act No. 15 of Extra Session of 1915 in the lower court, and we may therefore assume that they have abandoned this defense.

[1] Act No. 15 of Extra Session of 1915 must be construed in the light of the constitutional provision which authorized its passage. The pertinent part of the title of the act is as follows:

"To provide for the creation of a board of examiners to examine applicants for certain offices and positions of employment, in such warehouses and other structures in aid of commerce as may be erected and operated by the board of commissioners of the port of New Orleans under the provisions of article 322 of the Constitution of the state of Louisiana."

The pertinent part of article 322 of the Constitution of 1913 is found in section 1 thereof. We quote the section:

"The board of commissioners of the port of New Orleans is hereby authorized to erect and operate warehouses and other structures necessary to the commerce of the port of New Orleans, and to that end shall have the right to expropriate any property necessary for said purposes; and to pay for same by issuing mortgage or mortgages, bond or bonds, against the real estate and buildings erected thereon; said mortgage or mortgages, bond or bonds, are to be paid out of the net receipts after the payment of operating expenses; that the said board of commissioners of the port of New Orleans are empowered to fix charges for storage on all goods or merchandise.

"The said board of commissioners of the port

of New Orleans are empowered to issue receipts, negotiable or otherwise, for property or merchandise in its charge or possession; provided, however, that they shall not be liable for a greater amount than the value of the buildings and land upon which the warehouse or warehouses are erected, for any transaction arising from the storage of merchandise thereon or otherwise."

Summarizing the provisions of Act No. 15 of Extra Session of 1915, we find that section 1 of the act creates the board of examiners, defines its power and duty, and limits the application of its civil service provisions to persons employed in warehouses or structures in aid of the commerce of the port, constructed and operated under the provisions of article 322 of the Constitution of the state. Section 2 fixes the personnel of the board of examiners. Section 3 provides for the clerical force and expenses of the board of examiners. Section 4 requires the board of examiners to certify the results of all examinations to the board of commissioners of the port, with its recommendations and, from the eligibles thus recommended, it provides that the board of commissioners shall appoint all officers and employees in its warehouses and other structures, except watchmen, patrolmen, firemen, samplers, weighers, inspectors of cotton, and unskilled laborers drawing not over $75 per month. This section also contains the following provision:

"All persons other than those appointed on the recommendation of said board of examiners may be removed by and at the pleasure of the board of commissioners of the port of New Orleans.".

Article 322 of the Constitution of 1913 was proposed as an amendment to the Constitution of 1898 by a joint resolution, Act No. 133 of 1910. The title of this act reads:

"Proposing an amendment to the Constitution of the state of Louisiana, giving the power to the board of commissioners of the port of New Orleans to erect and operate public warehouses."

[2] At the time of the passage of Act No. 133 of 1910 and of the ratification of the amendment to the Constitution of the state proposed by that act, no one then contemplated the construction of the Industrial Canal. In construing statutes, the legislative intent is controlling, and that intent is so clearly expressed in the title of Act. No. 133 of 1910 as to leave no room for doubt. The expressed purpose of the act was to amend the Constitution so as to vest in the board of commissioners of the port of New Orleans the power to construct and operate public warehouses. Subsequent to the passage of Act No. 133 of 1910 and the ratification by the voters of the state of the proposed amendment to the Constitution, the Legislature so interpreted that act and article 322 of the Constitution, by the passage of Act No. 244 of 1914, the title of which reads:

"Proposing an amendment to the Constitution of the state of Louisiana giving the power to the board of commissioners of the port of New Orleans to dig, build, erect and operate, or acquire and operate a navigation canal, and the necessary locks, slips, laterals, basins and appurtenances thereof in the city of New Orleans, to connect Lake Pontchartrain and the Mississippi river."

[3] The acts and amendments to the Constitution to which we have referred convince us that the civil service provisions of Act No. 15 of Extra Session of 1915 do not apply to persons exclusively engaged in the construction of the Industrial Canal. Persons engaged in that work were employed by the board of commissioners without reference to or the observance of any of the provisions of that act. Moreover, the service is for an indeterminate period, and is therefore not classifiable.

Item 13 of the rules, regulations, and classifications of the board of examiners for the board of commissioners of the port of New Orleans is as follows:

"When an officer or employee has been given an extended leave of absence or has resigned, such person shall or may be placed upon the eligible register, without examination, if application is made by said party within twelve

months of the date of his or her resignation, provided he or she has the approval of the head of the department they had formerly served in," etc.

In this case the relator abandoned the position in the classified service in which he was fully protected by the provisions of Act No. 15 of Extra Session of 1915, to accept a position, at a higher salary, in a service to which Act No. 15 of Extra Session of 1915 does not apply, without complying with item 13 of the rules, regulations, and classifications of the board of examiners for the board of commissioners of the port of New Orleans. He has sawed off the limb between himself and the tree and this court is powerless to help him.

The relator relies upon several recent decisions of this court and contends that the judgment of the lower court must be affirmed, or that the cases cited must be differentiated from the case at bar. The differentiation is easy. In every case cited by relator the employee's status was admittedly that of a civil service employee. In the Sonnenberg Case, 90 So. 417, 149 La. 1095, the question was whether the position held by the relator was abolished by the board in good faith. The court held that it was not. In the Exnicios Hughes Case, the question was whether civil service employees in the cotton warehouse could be discharged by the board for mere purposes of economy. The court held that they could not. In the Exnicios Case, 96 So. 539, 153 La. 706, the question was whether the board, by lulling the relator into fancied security and inaction, pending a similar suit brought by other parties, could then plead laches as a bar to his suit. The court held that it could not. In the Skelly Case (No. 26840) 105 So. 510, 159 La. 465, of the docket of this court, the question was merely one of laches. The court held that relator had slept upon his rights. Not one of these cases has any application to the case at bar.

For the reasons assigned, the judgment appealed from is avoided and reversed, and it is now ordered that relator's suit be dismissed at his cost in both courts.