Some of the deeds show, as alleged, that the property conveyed is in the N. W. ¼ of Sec. 3, instead of the S. W. ¼ of that section, but no effort was made to show, nor does the record disclose, that errors in description were made, and, if so, whether the intention was to convey the S. W. ¼ of the section.

Each of the sales by which Triche claims to have acquired recites that the property was acquired by his vendors from their deceased father, J. B. Blanchard. However, there is no proof of any description showing who were the heirs of Blanchard, although this proof constitutes a link in the chain of title.

 While one suing a trespasser is not called upon to establish a title good as against the world, when he relies upon title to recover, nevertheless, he must show an apparently good title, that is to say, one which upon its face seems to convey title. Union Sawmill Co. v. Starnes, 121 La. 554, 46 So. 649; Stille v. Shull, 41 La. Ann. 816, 6 So. 634; Tircuit v. Burton-Swartz Cypress Co., 162 La. 334, 110 So. 489. We think that the defects, pointed out, considered together, show that plaintiffs have not established an apparently good title. If plaintiffs had actual possession of the land, they might invoke that possession to enable them to recover, but the record fails to disclose that they had actual possession, but shows rather to the contrary.

 Defendant, as we have said, has asked us in its answer, without referring to the plea of prescription, to make the judgment of nonsuit an absolute judgment. It has also discussed the plea of prescription in oral argument and in its brief, and has asked us to

consider the plea. The trial judge did not consider the plea. Plaintiffs have not briefed it. Without expressing any view on the plea, we think we should have an expression of opinion concerning it from the trial judge, before passing upon it, especially as the plea involves questions of fact. Cf. Conery v. New Orleans Water-Works Co., 39 La. Ann. 770, 773, 2 So. 555.

Our conclusion is that the case should be remanded to enable plaintiffs to correct the foregoing deficiencies, if it is able so to do, and to give both sides an opportunity to strengthen their case, should either desire it, by the introduction of additional evidence. To remand the case, it will be necessary to set aside the judgment.

For the reasons assigned, the judgment is set aside, and the case is remanded for the purposes stated in the premises, especially in the last paragraph thereof, including the rendering of judgment, plaintiffs to pay the costs of this appeal, and the costs of the lower court to abide the final determination of the case.

O'NIELL, C. J., absent.

141 So. 46

**STATE ex rel. CAIRE v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.**

No. 31474.

Feb. 29, 1932.

Rehearing Denied March 30, 1932.

Harold A. Moise, of New Orleans, for appellant.

Arthur B. Hammond and R. J. Weinmann, both of New Orleans, for appellee.

O'NIELL, C. J.

On the 29th of May, 1918, Rene Caire applied to the board of examiners, created by Act No. 15 of the Extra Session of 1915, for a civil service examination for employment in a clerical position by the Board of Commissioners of the Port of New Orleans—known as the "Dock Board." Caire was given the examination on the 31st of May, 1918, made a record of 93 per cent. and was given probationary employment on the 31st of July, 1918, and permanent employment on the 28th of May, 1919, as a civil service employee, in the classified service. He was classified as a junior accountant, receiving a salary of $80 per month at the beginning and finally $175 per month, his duties being to classify the vouchers and keep separate accounts of the expenditures of the cotton warehouse, the grain elevator, and the coal tipple, operated by the dock board under the authority of article 322 of the Constitution of 1913. On the 10th of February, 1931, Caire received from the dock board's auditor a letter saying that he (Caire) was thereby notified that the position of junior accountant, held by him, was thereby abolished, effective on the 15th day of February, 1931. The auditor expressed the board's regret, and stated, as the reason for abolishing the position, that the board was forced so to act. in pursuance of its policy of retrenchment, and that there was then no necessity for the position of junior accountant. Accordingly, Caire was let out on the 15th of February, 1931. He filed a written protest, saying that the action of the board in dismissing him was a violation of the civil service law, Act No. 15 of the Extra Session of 1915, and he demanded reinstatement.

. He brought this suit for reinstatement and for his salary, at $175 per month, from the 15th of February, 1931, until reinstated.

The dock board pleaded that the relator's petition did not set forth a cause or right of action, and, in the alternative, that Act No. 15 of the Extra Session of 1915 was unconstitutional, for several specified reasons, and that, if the act was not unconstitutional originally, it was superseded by the provisions of section 17 of article 6 of the Constitution of 1921. These pleas were heard and overruled. Answering the suit, the dock board denied that Caire was a civil service employee, under the statute or the rules of the board of examiners, and averred that the position of junior accountant, which Caire had held, was in fact abolished. The case was decided in favor of Caire. The dock board has appealed from the decision.

There was no merit in the defendant's exception of no cause or right of action. The relator's allegations, assumed to be true, showed that the position of junior accountant, which he had held under the civil service law, was not abolished, but that he was discharged in violation of the civil service law.

The attorney for the dock board did not argue orally his plea that the act of 1915 was unconstitutional, and in his brief he submits the plea with the statement merely that he believes that the plea is perfectly good and proper, and that the questions raised have not been decided by this court. The attorneys for Caire have given what appears to be a sufficient answer to the questions of constitutionality; and, in the absence of an argument

on the part of the party pleading the unconstitutionality of the statute, we consider the answer sufficient. The plea that the act of 1915 is unconstitutional, for the reasons stated in this case, was filed by the attorney for the dock board in State ex rel. Reuter v. Board of Commissioners of the Port of New Orleans, 161 La. 207, 108 So. 417, and was submitted without argument by the attorney for the board; and, for that reason, this court dismissed the plea with the statement that the court assumed that the plea was abandoned. It is not the province of the courts to look for a reason to declare a statute unconstitutional—especially a statute that has been in force and enforced for many years, and more especially a statute of great public importance. Apparently, there is no merit in the plea that the act of 1915 is unconstitutional; and we affirm the judgment overruling the plea.

■ The contention that the act of 1915 was superseded by the provisions of section 17 of article 6 of the Constitution of 1921, giving the dock board the power to organize or reorganize the several departments of the board and to fix the duties and compensation of the officers and employees, is answered by the proviso, "excepting, however, such civil service requirements as may be established by State laws."

The reasons urged by the dock board for contending that Caire was not protected by the civil service law are: (1) That he was only 17 years of age when he took the examination; (2) that he was earning less than $75 per month when he took the examination; (3) that the examination was not a competitive examination, as required by the rules of the board of examiners; (4) that the board of examiners did not certify three eligibles for appointment to the position of junior accountant, as required by the statute; (5) that there was no publication of a notice of the examination; (6) that, after the examination, Caire was employed at a salary of $80 per month and the salary was afterwards increased until it reached $175, without any further examination; and (7) that Caire was employed in the executive department, and not in the cotton warehouse or in any other structure operated under authority of article 322 of the Constitution of 1913.

■ As to the first objection to Caire's employment, it is sufficient to say that there is nothing in the act of 1915 or in the rules of the board of examiners, provided for in the act, that prescribes an age limit for employees under civil service.

■ As to the second objection, it is true that Caire was employed by the dock board, not under civil service, at a salary of $65 per month, when he took the civil service examination for a clerical position at $80 per month. The first section of the act of 1915 excepts from civil service employment "watchmen, patrolmen, firemen and unskilled laborers, drawing pay of Seventy-five Dollars or less per month, and samplers, weighers and inspectors of cotton." We are not sure that a junior accountant, or bookkeeper, would be deemed an unskilled laborer merely because of his salary being only $75 or less per month. But that is not important beside the fact that Caire took the examination for a position paying $80 per month. It is a matter of no importance that he was already employed by the dock board at a salary less than $75 per month, and not under civil service.

■ The third complaint is that the examination was not competitive. The rules of the board of examiners require competitive examinations, but the statute, on the contrary, declares merely that the board shall examine under such rules and regulations as the board may establish; and on the 26th of April, 1918, at the request of the dock board, the board of examiners adopted, as a war measure, a resolution providing that the employees of the dock board who had not taken the civil service examination, but who had proven to be valuable and competent employees, should be allowed to take a noncompetitive examination to come under the civil service rules. The dock board formally acted upon the resolution, and Caire was one of the employees who took the examination accordingly. There was nothing illegal in the action of either the board of examiners or the dock board.

The dock board's fourth complaint, that the board of examiners did not certify three eligibles for the position which Caire got, is answered by the fact that the statute (section 1) requires the board of examiners to recommend three or more eligibles, "when practicable." It was not shown or contended by the dock board in this case that it was "practicable" for the board of examiners to recommend three or more eligibles when Caire was recommended for employment. In fact, the dock board did not offer any evidence at all on the trial of this case.

■ The fifth complaint, that there was no publication of a notice of the examination, is not sustained by any evidence. We assume that the board of examiners complied with the rules in that respect.

■ Appellant's sixth complaint has reference to the fact that Caire's salary was increased, from time to time, from $80 per month to $175 per month, without a civil service examination. The rules of the board of examiners do not require that an employee of the dock board shall undergo an examination as a condition precedent to an increase of his salary. Under Item 11, on p. 5, the rules provide that transfers or promotions involving a change in salary shall be made by the dock board on request of the head of the department, giving the reasons in detail and the present and proposed salary; and the same rule provides that, where it is wholly practicable, vacancies are to be filled by promotion in the same way but always within the discretion of the dock board, and that the employee in such case shall be subjected to an examination by the board of examiners with reference to the better position. Although Caire's salary was increased, from time to time, he was never promoted or transferred to another position; nor were his duties, nor was the nature of his employment, changed in any way in connection with an increase in his salary. There was no violation of the rules in that respect.

■ Appellant's seventh contention is that Caire was employed in an office in the executive department and not in the cotton warehouse, the coal tipple, the grain elevator, or in any other structure the employees in which are subject to classification and the protection of the civil service law. The only basis for that contention is that the desk at which Caire worked was in the room, or suite of rooms, in which the executive officers had their desks, and not in the cotton warehouse, or the coal tipple, or the grain elevator, or in any other establishment the employees of which are under the protection of the civil

service law. The important fact, however, is that Caire's duties appertained entirely to the cotton warehouse, the coal tipple, and the grain elevator, and that he was not employed to perform and did not perform any executive function, or any duty in aid of the executive department or officers or functionaries of the dock board. His duties, specifically, were to classify the vouchers for the cotton warehouse, the coal tipple, and the grain elevator, separately, and to post them to the proper account, and to post the ledger, and to show the cash receipts, of each of these establishments. His employment, therefore, was in the cotton warehouse, the coal tipple, and the grain elevator, within the meaning of the statute—as much so as if his work was actually performed inside of these establishments. State ex rel. Sonnenberg v. Board of Commissioners of the Port of New Orleans, 149 La. 1095, 90 So. 417; State ex rel. Exnicios v. Board of Commissioners of the Port of New Orleans, 153 La. 705, 96 So. 539; State ex rel. Reuter v. Board of Commissioners of the Port of New Orleans, 161 La. 207, 108 So. 417.

The defenses which we have discussed and disposed of were hardly consistent with the reason given originally by the dock board, through its auditor, for dispensing with Caire's services. The only consistent defense is the contention that the dock board did not discharge Caire but abolished the position of junior accountant, as a matter of economy and because there was then no necessity for the position. The evidence, however, leaves no doubt that the position which Caire was employed in was not abolished, and that he was simply let out, in violation of the civil service law, and on the pretext that his position was abolished. In that respect the case is very much like the Sonnenberg Case and the Exnicios Case, supra, where the dock board, in each case, discharged a time inspector, under the pretense of abolishing the position, and immediately employed some one else to perform the same duties, calling the new employee a detective, instead of a time inspector. In the present case, the dock board first employed two additional men in the cost accounting department, in which Caire was employed, and then dispensed with the services of Caire and another employee in that department; the net result of the employment of the two additional men and the letting out of Caire and the other employee being that the same work continued to be done by the same number of employees afterwards as before. These facts were testified to by Caire and by the employee at the head of the cost accounting department, or section, in which Caire was employed, and the facts were not denied by any one. Section 5 of the statute provides that the civil service employees of the dock board shall hold their offices or employment during their good behavior, and shall not be removed except on charges preferred against them and proven contradictorily against them. Our conclusion therefore is that the judgment appealed from is correct.

The judgment is affirmed.