FOURNET, Justice
 

 (concurring).
 

 The purpose for which a civil service law is enácted is a most laudable one, and, as is very aptly stated in 5 R.C.L. 608, Section 1, these laws are “designed to eradicate the system of making appointments primarily from political considerations with all its attendant evils of inefficiency and extravagance, and in its place to establish a merit system of fitness and efficiency as the basis upon which appointments to the civil service should be made. Such laws substitute for the uncontrolled will of the
 
 *392
 
 appointing officer the results of competitive examinations, and require that appointments to office he made from among those who have shown themselves by examination to be best qualified for positions in the civil service, and, as might be supposed, result generally in improvements in the public service from the experience and proficiency acquired through merit, and in a tenure of office which is independent of political favor.”
 

 It is the generally accepted rule that an ordinance or a statute that vests arbitrary discretion in a public official without prescribing fixed and definite rules or specific conditions for the official’s guidance, is unconstitutional. See 12 A.L.R. 1435-1455; 72 A.L.R. 229-232; Vol. 1 McQuillin on Municipal Corporations, 2d Ed., 1102, Sections 393 through 399; City of Shreveport v. Herndon, 159 La. 113, 105 So. 244; State v. Maitrejean, 193 La. 824, 192 So. 361; City of Baton Rouge v. Shilg, 198 La. 994, 5 So.2d 312, and the authorities therein cited.
 

 In my opinion there are many provisions in Louisiana’s Civil Service Act that not only fall short of the laudable purpose for which it was enacted, but are also so arbitrary as to render these provisions unconstitutional. For example, those in Section 11 of Act No. 172 of 1940 authorizing the continuing in office of persons holding positions on July 1, 1942, that have been placed by the act in the qualified services upon their being certified by the director of the commission after their submission to a noncompetitive test prescribed by him, although no rules, conditions, or regulations are given by which the director is to be guided in the drafting of these tests. This, to my way of thinking, is so arbitrary as to, in effect, leave the question of the fitness or unfitness of the present incumbents in office to be continued in their positions up to the sole discretion of the director himself.
 

 The case of State ex rel. Caire v. Board of Commissioners of Port of New Orleans, 174 La. 516, 141 So. 46, cited in the majority opinion, is inapposite for the reason that in that case the board of examiners,
 
 as a war measure,
 
 adopted a resolution at the request of the Board of Commissioners of the Port of New Orleans allowing the board’s valuable employees to be continued in service upon their taking of a noncompetitive examination, the constitutionality of which was not placed at issue in the case.
 

 An examination of the Fosdick case and the authorities of other states relied on in the majority opinion will disclose that the civil service laws of the states there under consideration authorized the continuing in office of the incumbent employees upon their satisfactory passage of a noncompetitive examination
 
 comparable to the competitive examination given those seeking appointment to similar offices.
 
 In other words, the man holding office was given preference, but only provided he could stand the competitive examination required and
 
 fixed
 
 by the civil service law itself. The directors and commissioners under the civil service acts in those states were not given the arbitrary power that is given to the director of the civil service in Louisiana under Act No. 172 of 1940.
 

 
 *394
 
 In the instant case, however, the complaining taxpayer who is seeking to enjoin the enforcement of Act No. 172 of 1940 and the expenditure of the amounts appropriated out of the general public fund, to which he as a taxpayer is a contributor, is not directly affected by the provisions of the act and can have only one right to contest its constitutionality, that is if the act as a whole is unconstitutional. I believe that even if the sections which I am convinced are unconstitutional are deleted, the act as a whole is still a workable one. Consequently, the complaining taxpayer stands without right to the relief sought. For this reason, I am concurring in the majority opinion.