### DEPARTMENT OF HIGHWAYS OF LOUISIANA
### v.
### MORSE BROS. & ASSOCIATES, Inc.
### No. 14542.

United States Court of Appeals, Fifth Circuit.

March 12, 1954.

---

L. C. Parker, Joseph A. Loret, W. Crosby Pegues, Jr., D. Ross Banister, Philip K. Jones, Baton Rouge, La., for appellant.

John B. Hussey, Hussey & Smith, Shreveport, La., Harold A. Wright, Minneapolis, Minn., for appellee.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellee sued for damages alleged to have been caused by the breach of a contract for the performance of certain highway work through failure of appellant to make available the land or property upon which it was to be done.

The first question to be determined is whether or not the appellant is an entity, corporate or otherwise, constituting it a citizen subject to suit by a non-resident in the Federal Courts. In the original complaint, appellee alleged:

"Defendant, Department of Highways of the State of Louisiana, is a body corporate or politic in law, existing under and by virtue of the constitution and laws of the State of Louisiana, with its domicile in the Parish of East Baton Rouge, Louisiana."

In its answer defendant, appellant, admitted "the allegations of Article 2 * * * of the complaint". However, if it be correct in the present contention, this erroneous admission of an allegation of law can not serve to vest a Federal Court with jurisdiction which legally it did not have. So an examination of the pertinent constitutional and

statutory provisions of the State, as construed by its courts, becomes necessary.

. Counsel for appellant argues that the act creating the Department of Highways, as distinguished from its predecessor, the Highway Commission, was changed to conform to the law governing the Board of Commissioners of the Port of New Orleans, by omitting the express declaration that the department should be a body corporate.

In the statute creating the Department of Highways, Act. No. 4 of 1942, Section 8, LSA–R.S. 48:22, it was provided:

"The Department of Highways shall have and enjoy all of the rights, powers and immunities incident to corporations; and shall have power to acquire, own, administer, alienate and otherwise dispose of all kinds of property, movable and immovable, tangible and intangible, to contract, to adopt, make, alter, have or destroy an official seal; *to sue and be sued, implead and be impleaded in any competent court of justice, subject to all applicable laws relative to jurisdiction.*"

Section 3 of the same Act, LSA–R.S. 48:12, declares:

"The domicile of the Department of Highways shall be in the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana. *Service of citation and other process directed to the Department of Highways shall be made on the Department by handling such citation or other process to the Director of Highways or to the Chief Engineer.*" (Emphasis by the writer.)

With respect to the Board of Commissioners of the Port of New Orleans, Act No. 70 of 1896, LSA–R.S. 34:1, establishing a "commission for the port of New Orleans", in Section 2, LSA–R.S. 34:21, among other things, declared that said Board " * * * shall have and enjoy all the rights, powers and immu-

nities incident to corporations." Act No. 36 of 1900 amended Section 2 and, in turn, was amended by Act No. 14 of the Special Session of the Legislature of 1915. The language quoted as first incorporated in the law creating the Board of Port Commissioners for the City of New Orleans (hereafter referred to as the Dock Board), has never been changed.

Appellant cites three decisions of the Supreme Court holding that the Dock Board was not a corporation, to wit, Duffy v. City of New Orleans, 49 La.Ann. 114, 21 So. 179; State ex rel. Tallant v. Board of Commissioners of Port of New Orleans, 161 La. 361, 108 So. 770; and Miller v. Board of Commissioners of Port of New Orleans, 199 La. 1071, 7 So.2d 355. In the first of these cases, plaintiff sued the City of New Orleans, attacking Act 70 of 1896 as unconstitutional and void. Judge Breaux, as the organ of the court, said [49 La.Ann. 114, 21 So. 180] "Whether the legislature can pass a valid act to establish a commission for the port of New Orleans, define their powers and duties, and provide revenue therefor, is the question before us. The first ground of nullity urged is that the act creates a corporation" in violation of Article 46 of the then constitution "prohibiting the general assembly from passing any local or special law creating corporations." It was decided that the statute creating the board and vesting in it certain powers, was not a local law, for the reason that the subject matter dealt with was one affecting the whole state, to wit, the commerce of the port of New Orleans. Judge Breaux's peculiar style is such that no direct quotation from the body of the decision can be used to state concretely his finding, except in the syllabus No. 1, which reads:

"Legislation resulting in the appointment of a board of commissioners, with functions defined, does not necessarily create a corporation, though vested with some of the essentials to the life of a corporation."

In State ex rel. Tallant v. Board of Commissioners of Port of New Orleans, the plaintiff was an employee, receiving a salary of $241 per month, who was removed from that position and given another with a salary of only $150. He brought suit by way of mandamus to be reinstated, and to recover the difference in salary which he would have received. The Supreme Court quoted from the opinion of the District Judge, which begins with a discussion of the Act of 1915 above referred to. In connection therewith reference was made to another statute, Act No. 15 of 1915 (Ex.Sess.), creating an "examining board" with authority to establish rules and regulations, but it was said "* * * the crux of this whole case is embodied in the last sentence of section 5 (presumably the act creating the examining board) which reads as follows:

" 'They (employees and appointees under civil service) shall hold their offices or employment during good behavior, and shall only be removed on charges preferred against them to said board of commissioners, and which shall be proven contradictory against them to the satisfaction of said board.' " [161 La. 361, 108 So. 772.]

Incidentally, the court's finding was of considerable length and somewhat involved, and its conclusion is tersely stated in the first syllabus, to wit,

"Board of commissioners of the port of New Orleans, created by Act No. 70 of 1896, is not a corporation, but a 'state agency,' administering public property to advance prosperity of the port."

In Miller v. Board of Commissioners of Port of New Orleans [199 La. 1071, 7 So.2d 356], the action was one in tort, by an employee of the lessee of one of the wharves on the river front. The Supreme Court held that the board was "an agency of the State, performing purely administrative functions", citing State ex rel. Tallant v. Board of Commissioners of Port of New Orleans, su-

pra. It was further stated: "From an examination of the Constitution and the Acts of the legislature dealing with the Dock Board, it is apparent that the right to sue the Dock Board in tort has not been granted." The court then refers to and analyzes the two prior cases referred to above. It answered the contention that a state agency is liable in tort, even though it is engaged in a governmental function, if the injury arises from the failure or neglect to perform a mandatory (as distinguished from a discretionary) duty; (2) that such an agency was liable because the activities out of which the injury arose were for profit; and (3) a state agency is liable in tort, if the injury arises through the agency performing a non-governmental or proprietary function, by saying

"The authorities cited by counsel involve municipalities and corporations authorized by charter or by statute 'to sue or to be sued.' " (Emphasis by the writer.)

It was stated in argument by one of the attorneys for appellant that in the act changing the name to Department of Highways in 1942, the declaration that the Highway Department should be a corporation, was purposely omitted, to make applicable the decisions affecting the Dock Board. However, there was no lessening whatever of its powers and authority. It is still authorized to sue and be sued as was held in the case of Department of Highways v. Lykes Bros. S. S. Co., Inc., 209 La. 381, 24 So.2d 623, as disclosed by the first syllabus, as follows:

"Though Department of Highways is not a 'corporation' in the true sense of statute creating it, it was given the same rights as a corporation and therefore, for purposes of suit by department to recover for damages to bridge maintained by department of highway system as result of collision with bridge by ship, rules applicable to corporations are applicable thereto. Act No. 4 of 1942, § 8."

On the other hand the courts of the state, as have the Federal Courts, following the construction placed upon its laws by the former, have held, as to the highway commission, predecessor of appellant, that it was an entity or juridical personage or corporation expressly authorized to sue and be sued, and in fact, the only one entitled to stand in judgment with respect to its powers and the properties under its control. Saint v. Allen, 172 La. 350, 134 So. 246; Farnsworth v. Louisiana Highway Commission, D.C. 1934, 8 F.Supp. 11, affirmed in, 5 Cir., 74 F.2d 910. In Saint v. Allen, supra [172 La. 350, 134 So. 249], the Louisiana Supreme Court said:

"The commission, in our opinion, is a distinct legal entity from the state. Section 3 of Act No. 95 of 1921 (Ex.Sess.) [LSA–R.S. 48:22] makes it a body corporate, with power as such to sue and be sued. It is an agency of the state, and not the state itself, created for the purpose of executing certain duties, devolving primarily upon the state. In a general sense, in its relations to the state, it is not dissimilar to levee districts, which are bodies corporate, created for the purpose of constructing and maintaining levees, which are duties, devolving primarily upon the state. It was held in State v. Standard Oil Co., 164 La. 334, 357, 113 So. 867, and in State v. Tensas Delta Land Co., 126 La. 59, 52 So. 216, that a levee district, though the creature and an agency of the state, had, as long as it was permitted to exist, a separate existence from the state, and that the state could not sue on causes of action accruing to the district. Nor, in a general sense, is the commission dissimilar, in its relations to the state, to the board of commissioners of the port of New Orleans, concerning which it was held that the board, as a body corporate, had a separate existence from the state, and, though an agency thereof, did not enjoy the immunity from the prescription, liberandi causa, enjoyed by the sovereign. Board of Commissioners of Port of New Orleans v. Toyo Kisen Kaisha, 163 La. 865, 113 So. 127. These cases are pertinent here for the purpose of showing that the Louisiana highway commission is a separate legal entity from the state.

"However, it may be said that the ruling, as to the separate existence of the commission, is not well taken here, because the act, creating it, provides that all contracts for highway improvement shall be made in the name of the state, and that the state, acting through the commission, may acquire gravel beds, and the like, by purchase, lease, or donation, and that the state provides the commission with funds with which to discharge the purposes of its creation. Sections 16, 23, 34, Act No. 95 of 1921 (Ex.Sess.). These facts, however, are insufficient to make the commission and the state one and the same. They merely show that the commission is an agency of the state. It does not even follow that, because contracts for highway improvements must be entered into in the name of the state, suits on such contracts should be brought by the state or against it, for the commission, as a body corporate, is given express power to sue and be sued, which shows that such suits (which might be reasonably expected to constitute the greater part of the litigation in which the commission might become involved) should be instituted by the commission, and not by the state."

■ In Farnsworth v. Louisiana Highway Commission, both the trial court for the Western District of Louisiana and this court held the highway commission to be a citizen within the meaning of the diversity provisions of the federal constitution and statutes. The mere omission of the declaration

that it shall be a corporation does not change the fact that it is an entity or body politic, having the same status as found in those decisions. See also Department of Highways v. McWilliams Dredging Co., D.C.W.D.La., 83 F.Supp. 132.

The next question is the contention of the appellant that under the provisions of the LSA–Civil Code, Arts. 1912 and 1933, an action for damages for a passive breach of a contract cannot be maintained without first putting the obligor in default, which it asserts was not done. The findings of fact by the lower court on this matter which are supported by the proof in the record are quoted as follows:

"VIII. This contract was awarded in public competition to the lowest bidder, and at the time the contractor prepared his proposal to construct this project for a specific price, he had the right to assume, and he did assume, that, if awarded the contract, he would be permitted to construct the project in such an orderly fashion.

"IX. In the Louisiana Standard Specifications for Roads and Bridges, which is incorporated in said contract by reference, it is provided that all necessary rights of way for the proper completion of the work would be secured by defendant, Department of Highways, without cost to the contractor.

"X. Prior to the execution of this contract, the contractor was assured by the Project Control Engineer and other representatives of the defendant that all rights of way necessary for the construction of the project had been secured or would have been secured by the time needed for the orderly execution of the job.

"XI. On May 18, 1943, the Department of Highways issued a work order directing the contractor to commence work on this project.

The Department of Highways excepted from this work order two segments of the highway near the center of the project, but inserted in the work order the standard provision

" 'It is understood that you will waive all claims for damages against the Department which might arise due to delays in the issuance of further work authorization.'

"The contractor questioned the issuance of such a partial work order, and was then advised for the first time that the Department of Highways had not yet completed its title to the rights-of-way across the segment excepted from that work order. The contractor objected to commencing work under such a work order, but the representatives of the Department of Highways assured the contractor that the rights-of-way would be secured and additional work orders would be issued prior to the time that the contractor should reach the point at which such rights-of-way would be needed under the contract.

"XII. On May 22, 1943, relying upon the assurances set forth in the next preceding paragraph, plaintiff began work on the construction of the project and started grading operations at the north end of the job, and proceeded in an orderly fashion and in accordance with the planned schedule, and completed the grading operations to the southerly end of the first balance point on June 26, 1943.

"XIII. The defendant had not secured complete rights-of-way across the properties within the second and third balance points, and contractor was obliged to shut down his grading operations on June 26, 1943, and orderly progress of the construction of this project was thereby disrupted.

"XIV. On July 8, 1943, defendant notified plaintiff that the Department had been served with an order by War Production Board revoking the preference rating applicable to this project.

"XV. The plaintiff protested the revocation of priorities, but on July 9, 1943, the defendant ordered the plaintiff to proceed with the construction of the project without priorities and to build into the project as much cost as possible within as short a period of time as possible.

"XVI. At that time the defendant had not yet secured the complete rights-of-way in the second and third balance points, and in order to comply with the direction of the defendant set out in the next preceding paragraph, it was necessary for the plaintiff to proceed with the construction of the project in an abnormal, disorderly and disproportionately costly fashion, entirely contrary to normal and ordinary construction methods and practices. That the defendant did not furnish complete rights-of-way for this project until August 24, 1943.

"XVII. In obedience to the directions of the defendant and under the conditions imposed by it, plaintiff continued the construction of the project under protest and without the benefit of priority ratings that the defendant had obligated itself to procure, until November 16, 1943, on which date the War Production Board ordered that construction of the project immediately cease. In compliance with that order defendant instructed plaintiff to stop work on the project.

"XVIII. Plaintiff complied, under protest, with the order of suspension and discontinued work on the project until November 30, 1943, and on that date defendant directed the plaintiff to resume limited operations on a portion of the project remaining to be constructed.

"XIX. Plaintiff complied, under protest, with the restricted resumption order and continued with limited operations on the project until January 3, 1944, on which date the defendant directed the plaintiff to resume full operations and complete the project.

"XX. The burdensome procedure imposed by the defendant and the breaches of contract by the defendant, and the delays incident thereto, projected the construction of this contract into a period of abnormal adverse working conditions, which greatly increased the time and cost of constructing the project.

"XXI. If the defendant had furnished the rights-of-way seasonably the plaintiff would have finished the job before November 15, 1943.

"XXII. All of the breaches of contract committed by the defendant were passive breaches of contract, and the defendant was never formally placed in default in regard to them, but defendant acknowledged its default in advance and agreed to remedy the default prior to the time that it would be burdensome to the plaintiff."

■ It is therefore clearly demonstrated that a formal putting in default or demand that the Department of Highways provide the rights-of-way in the face of the conditions and course pursued by it, would have been a useless gesture, which Appellee was not required to make. Farnsworth v. Louisiana Highway Commission, supra; Louisiana Farms Co. v. Yazoo & M. V. R. Co., 179 La. 539, 154 So. 445.

Finally, appellant contends that the damages suffered were not within the reasonable contemplation of the parties at the making of the contract and that in the first and second work orders given by the Highway Engineer there was incorporated a waiver of damages there-

tofore suffered to which appellee consented by proceeding with the work as ordered.

■ (1) It may be assumed that in contracts of this nature, the parties contemplated delays or interruptions caused by usual and normal weather conditions at the seasons of the year in which the work was to be performed and completed. However this did not include such interruptions or delays due to the failure of the Department of Highways to provide rights-of-way as required by the contract, to enable the contractor to pursue the work with reasonable dispatch. It is alleged and proven, as found by the lower court, that the damages were caused by this failure, but for which the contract would have been completed before any of the difficulties with the weather and otherwise subsequently occurred.

■ (2) As to the alleged waiver of damages by accepting the work orders in which such waivers had been arbitrarily inserted, the simple answer is that they were not part of the original contract and the engineer had no power or authority to make them a condition of the right of the contractor to proceed with the work so ordered otherwise. The latter was entitled to perform the contract as he agreed, and by proceeding, notwithstanding such attempted restriction of his right, he did not consent thereto, and there was no consideration to support any such attempted modification of the original contract.

As to the proof of damages, without attempting to consider the voluminous supporting evidence in detail, it may be said that each and every item was taken up in detail and proof thereof made to the satisfaction of the lower court, in a manner to make reasonably certain that appellee suffered the loss which it allowed.

The judgment of the lower court is therefore

Affirmed.