KIRBY LUMBER CORPORATION, Appellant,

v.

STATE OF LOUISIANA, through ANACOCO-PRAIRIE STATE GAME AND FISH COMMISSION, Appellee.

No. 18816.

United States Court of Appeals Fifth Circuit.

July 13, 1961.

As Corrected Aug. 21, 1961.

Rehearing Denied Sept. 16, 1961.

2 Cir., 1959, 270 F.2d 241; S. E. C. v. Morgan, Lewis & Bockius, 3 Cir., 1953, 209 F.2d 44.

9. See note 4 supra.

Joyce Cox, Houston, Tex., A. B. Cavanaugh, Cavanaugh, Hickman, Brame & Holt, Edmund E. Woodley, Lake Charles, La., Fountain, Cox & Gains, Houston, Tex., for appellant.

W. R. Jackson, Jr., Leesville, La., Jack P. F. Gremillion, Atty. Gen. of Louisiana, for appellee.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and DE VANE, District Judge.

DE VANE, District Judge.

This is a proceeding in which appellee, plaintiff below, seeks to condemn 912.45 acres of land owned by appellant, defendant below, in the Parish of Vernon, Louisiana. The land was being condemned for the purpose of constructing Anacoco Lake, which is situated about five miles west of Leesville, Louisiana, in Vernon Parish.

The Legislature of Louisiana, by an Act of 1948, created Anacoco-Prairie State Game and Fish Preserve as a political subdivision of the State and as its governing authority created the Anacoco-Prairie State Game and Fish Commission. By an Act of the Legislature in 1954 its territorial bounds were extended to include the lands belonging to appellant and being condemned in this suit.

■ This suit was originally filed in the State District Court of the Parish of Vernon under the general expropriation laws of Louisiana on August 5, 1959, and was removed to this Court by appellant on the grounds of diversity. Appellee promptly moved to remand. The lower Court held that the Anacoco-Prairie State Game and Fish Commission was the real party in interest in this case and denied the motion to remand, because of a prior ruling in a similar case between the same parties on May 30, 1959.

The earlier suit involved 23 acres of land in Vernon Parish, Louisiana, for a damsite near but not contiguous to the land being condemned in this suit. In the course of the disposition of the motion of appellee to remand in that case, District Judge Hunter held:

"Defendant contends that plaintiff is a separate and distinct corporate entity, possessing all the usual powers incident to corporations, and that it is a distinct and separate entity apart from the State, and that this is sufficient to vest this Court with jurisdiction based upon diversity. Whether or not this is true must be determined by the law of Louisiana. In Louisiana Highway Commission v. Farnsworth, 74 F.2d 910; Department of Highways of Louisiana v. Morse Bros. and Associates, Inc.,

211 F.2d 140; and Louisiana Land and Exploration Company v. The State Mineral Board, 229 F.2d 5, the Fifth Circuit has had occasion to consider like questions. In each of their cases their decisions were predicated upon clear and unmistakable pronouncements of the Louisiana Supreme Court. A reading of these cases and a reading of the statutes creating the plaintiff Commission here, convinces the Court that the plaintiff Commission must be considered a separate entity, or body politic, which is subject to suit by a non-resident in federal district court in Louisiana."

The chief grounds for reversal of this case urged by appellee is that the courts of the United States of America do not have jurisdiction over expropriation suits filed by the State of Louisiana to condemn or expropriate property located within its territorial limits and since it goes to the jurisdiction of the lower and this Court to hear and determine this litigation, it will be considered and disposed of before the grounds for reversal advanced by appellant are considered.

Judge Hunter in denying the motion of appellee to remand cites three cases as authority for his action. A brief review of each of these cases is set out below.

In Louisiana Highway Commission v. Farnsworth, 5 Cir., 74 F.2d 910, this Court held the Federal District Court had jurisdiction of a suit by Farnsworth against the Louisiana Highway Commission for damages growing out of breach of contract between the parties. In this case the Court cited and relied upon a decision of the Supreme Court of Louisiana in the case of Saint v. Allen, 172 La. 350, 134 So. 246, in which the Supreme Court of Louisiana held, in a suit brought by the Attorney General of Louisiana challenging the right of the Louisiana Highway Commission to employ attorneys to represent it without the consent or approval of the Attorney General, that the Louisiana Highway Commission was an independent corporation, vested with all the powers required to make it such and was, therefore, not a mere department of the State of Louisiana.

In Department of Highways of Louisiana v. Morse Bros. and Associates, Inc., 5 Cir., 211 F.2d 140, this Court held in an action against the Department of Highways of the State of Louisiana to recover damages caused by a breach of a contract for the performance by contractor of certain highway work that this Court had jurisdiction of such an action, on the ground that the Department of Highways was an agency or body politic which was subject to suit by a nonresident in Federal Court.

In Louisiana Land and Exploration Company v. State Mineral Board, 5 Cir., 229 F.2d 5, this Court in an opinion written by Judge Borah held that the Louisiana State Mineral Board was not a separate and distinct corporate entity, but was in fact merely an agency or arm of the State, and, therefore, could not be sued under the Eleventh Amendment to the U. S. Constitution, precluding suit against the State by a citizen of another state. This is a short but very clear opinion on the subject and is based entirely upon the determination by the Court that the State Mineral Board was not a corporation under the law but merely an agency of the State.

Another case decided by this Court bearing upon the issue involved in this case is Parks et al. v. Carriere Consol. School District, 5 Cir., 12 F.2d 37. While this is a Mississippi case, what the Court has to say with reference to its jurisdiction is equally controlling here. The only error relied upon in that case was the claim that the District Court was without jurisdiction to hear and determine the case for the reason the Carriere Consol. School District was an arm of the state and as such could not be sued in a federal district court under the Eleventh Amendment to the Constitution.

It is interesting to note that the Supreme Court of Mississippi has con-

strued the sections of the Mississippi Code which create school districts as conferring upon them the same immunity from suit as the state has. In spite of this decision, the Court held 12 F.2d at page 38:

"However, the question of jurisdiction is to be tested, not by the incapacity of the school district to be sued, but by its capacity to sue. In the instant case, its position on the record is that of plaintiff, and not defendant. The Supreme Court of Mississippi has also construed the same sections of the Mississippi Code as conferring on school districts the capacity to contract and to sue to enforce their contract in their own names or in the names of their trustees, and they are not required to sue to enforce their contracts in the name of the state.

"If a school district is authorized by the legislation creating it, as construed by the courts, to contract and sue in its own name, then it is a body corporate, or a quasi corporate body, and as such a citizen of the state under which it is organized, within the purview of the Removal Act."

The difference in the name of the state highway agency in the Farnsworth case and in Morse Bros. should be noted here for the reason that counsel for the Department of Highways argued in the Morse Bros. case that the Act changing the name of Louisiana Highway Commission to Department of Highways in 1942 was purposely drawn so as to divest Federal Courts of jurisdiction of suits against the Highway Department. The Court in disposing of this point stated (211 F.2d at page 143):

"However, there was no lessening whatever of its powers and authority. It is still authorized to sue and be sued as was held in the case of Department of Highways v. Lykes Bros. S. S. Co., Inc., 209 La. 381, 24 So.2d 623, as disclosed by the first syllabus, as follows: 'Though Department of Highways is not a "cor-poration" in the true sense of the statute creating it, it was given the same rights as a corporation and therefore, for the purposes of suit by department to recover for damages to bridge maintained by department of highway system as a result of collision with bridge by ship, rules applicable to corporations are applicable thereto. Act No. 4 of 1942, § 8.' "

It was also suggested on oral argument in this case that the Act creating the Anacoco-Prairie State Game and Fish Commission was likewise drawn so as to divest Federal Courts of jurisdiction of cases brought by or against it. The ability of a state to accomplish such a purpose was clearly stated by this Court in Louisiana Highway Commission v. Farnsworth, supra, 74 F.2d at page 913 as follows:

"It is not within the power of the state to exempt a Louisiana corporation from liability to suit in a federal court to enforce its contract obligations which are subject to be sued on in state courts. Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766; Chicot County v. Sherwood, 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546."

In this case appellant relies heavily upon Louisiana Highway Commission v. Farnsworth, supra, and Department of Highways v. Morse Bros., supra, while the appellee relies heavily upon the decision of this Court in Louisiana Land and Exploration Company v. State Mineral Board, supra. The motion to remand this case to the District Court and order its return to the State Court is controlled entirely by the question of whether Anacoco-Prairie State Game and Fish Commission is in fact a corporation subject to suits against it.

The Court has given serious consideration to this question and is of the firm opinion that the decisions of this Court in Louisiana Highway Commission v. Farnsworth, supra, and in Department of Highways v. Morse Bros., supra, are controlling here. The authority given

the Anacoco-Prairie State Game and Fish Commission by the Act creating it and the authority given the Highway Department by the Act creating it are in many respects very similar.

All we need to do to establish beyond any doubt the jurisdiction of the lower Court and this Court in this case is to refer to the provisions of Section 5 and Section 7 of Act 277 of 1948 establishing the Anacoco-Prairie State Game and Fish Preserve and Anacoco-Prairie State Game and Fish Commission.

Section 5 provides:

"That Leesville, Vernon Parish, shall be the domicile of the said Game and Fish Commission herein created, and said Commission shall have the right, power, and authority, to sue and be sued. It may purchase, lease and expropriate in its own name all property necessary to the erection and maintenance of said Game and Fish Preserve, expropriation proceedings instituted by said Commission shall be conducted under and according to the general laws now in force for the expropriation of property for public purposes."

And Section 7 provides:

"That said Game and Fish Commission shall have the power and authority to acquire by private contract or to expropriate any land, including minerals belonging to private individuals or private corporations or partnerships necessary to the erection and maintenance of the said Game and Fish Preserve. It may, if advisable, acquire by private contract or expropriation only the surface of the property, leaving the ownership of any minerals in said private land owners, and leaving to said private land owners the right to grant leases for the production of oil, gas or other minerals from lands thus acquired by private contract or by expropriation."

In a very recent decision of this Court in the case entitled City of Thibodaux v. Louisiana Power & Light Company, 5 Cir., 255 F.2d 774, this Court in considering the obligation of the Court in cases of this nature quoted the following from the decision of Chief Justice Marshall in Cohens v. Commonwealth of Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257:

"It is most true, that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the Constitution. * * * With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."

Commenting further this Court said that diversity jurisdiction:

" * * * was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment * * *."

For the reasons stated above this Court finds and holds that the order of Judge Hunter denying the motion of appellee to remand this case to the State Court was correct and will be affirmed.

█ In its brief filed with the Court in this case appellee attacks the award

made by the Court below on the ground it was excessive. Appellee, however, took no cross appeal in this case and for that reason this claim of error on the part of the appellee is not before the Court.

■ Appellant presents three assignments of error as follows:

(1) Whether the trial judge in arriving at market value was correct in basing his award on a valuation of appellant's lands as denuded of its growing forest trees and timber because of an agreed stipulation as to the value of the merchantable timber on the lands.

(2) Was the trial judge right in applying a 6% capitalization rate to the annual income based on a determined annual growth to determine the market value without any evidence to support the application of that rate instead of applying a 4% capitalization rate used by appellant, which it claims is fully supported by the record and not controverted by appellee.

(3) The Court erred in not awarding appellant interest from the date of the filing of the complaint until the date of judgment and not awarding it costs and expenses in having its land appraised and the fees of its experts.

The decision of Judge Hunter in this case is reported in 188 F.Supp. 835. A careful review and analysis of the record and of Judge Hunter's opinion fully discloses that neither the record nor the opinion supports appellant's contentions stated in assignments of error 1 and 2. As to assignment of error number 1, the record discloses that Judge Hunter was extremely liberal in allowing both appellee and appellant to present testimony considered by them to be appropriate as an aid to the Court in determining the true market value of this land. While considerable testimony that is not pertinent to the issue here was admitted in evidence by the Court, such evidence was not considered by the trial judge in arriving at his decision. The record clearly discloses that the appraisals made by appellee's witnesses were not based on appellant's lands denuded of its growing forest trees and timber thereon. The Court's opinion was arrived at by taking into consideration the land as it existed on the date the condemnation proceedings were filed and all the Court did was to deduct from the value as determined by him ($148,500.-00) the stipulated price ($115,309.41) appellant agreed to pay for the merchantable timber thereon. The judgment was for the difference.

■ As to the second assignment of error, the Judge's opinion clearly discloses that his appraisal was not based upon the application of a 6% capitalization theory in determining the value of the land. Appellant offered considerable testimony in support of its claim that the true market value of this land on the day of taking could best be determined by the application of a 4% capitalization rate applied to the annual income based on a determined annual growth, which appellant's witnesses claimed is the basis now used by experts in determining fair market value of lands where reforestation is in effect. The evidence in this case shows that appellant had never started any program of reforestation on these lands, but had allowed them to remain in their natural state without any benefit of reforestation since appellant acquired the lands. The record in this case abundantly supports the judgment of this Court in its determination of the true market value of this property on the date suit was filed to condemn this land for the use and benefit of appellee.

■ As to the third assignment of error, by it appellant seeks to recover expert witness fees. Such fees are never allowed in condemnation cases in Federal Courts. Henkel v. Chicago, St. P., M. & O. Rwy. Co., 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386.

■ As to appellant's claim for interest on the judgment from the date the suit was filed until the date of judgment, the Court holds there is no merit to this claim. Appellant was not divested of

its land until the judgment of condemnation was entered and on that same day the full amount of the judgment was paid to prevent the running of interest. The judgment does not revert back to the date the suit was filed and there is nothing upon which interest could run until the judgment was entered.

The judgment of the Court below is in all respects affirmed.