Jana P. USRY, widow of David P. Usry

v.

LOUISIANA DEPT. OF HIGHWAYS.

RELIANCE INSURANCE COMPANY

v.

DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA.

Civ. A. Nos. 76–2733, 76–2741.

United States District Court, E. D. Louisiana.

June 27, 1978.

---

Lawrence S. Kullman, New Orleans, La., for Jana P. Usry.

Lawrence E. Abbott, New Orleans, La., for Reliance Ins. Co.

Jesse S. Guillot, New Orleans, La., for defendant.

## MEMORANDUM OPINION AND ORDER

EDWARD J. BOYLE, Sr., District Judge.

■ Alleging Virginia citizenship, Jana P. Usry, plaintiff in C.A. 76–2733, invokes the diversity jurisdiction of this court to pursue her "survival" and "wrongful death" actions, arising from the death of her husband following a one-car collision on the evening of September 8, 1975, against the defendant, denominated the "Louisiana Department of Highways" (Department).[1] The complaint was filed on September 3, 1976. The defendant in C.A. 76–2733 has moved, in the name of the "Louisiana Department of Highways,"[2] for dismissal of the complaint on the grounds that, under

---

1. Effective June 22, 1977, the Department was abolished and its powers, duties, functions and responsibilities were transferred to the secretary of the newly-created Department of Transportation and Development (T&D). LSA-R.S. 36:501, 36:509(F)(2), and 36:957(A) (West 1978 Special Pamphlet). The changes were effected under the Executive Reorganization Act, LSA-R.S. 36:1 *et seq.*, enacted by the Louisiana Legislature in carrying out the responsibility of reallocation vested in it by the State's 1974 Constitution, LSA-Const. Art. IV, § 1 and Art. XIV, § 6. The instant action involves T&D only in its capacity as transferee of the State high-

way functions formerly performed by the Department and the State Board of Highways, which also was abolished under the Executive Reorganization Act (*see* n.18).

2. The Department has not attempted to substitute its successor department as the party defendant in this action. Such a substitution is not required under Louisiana or federal law. LSA-R.S. 36:904 (West 1978 Special Pamphlet); Rule 25(c), Fed.Rules Civ.Proc.; Wright & Miller, Federal Practice and Procedure; Civil § 1958 at 663–64.

the Eleventh Amendment of the United States Constitution, this court is without jurisdiction to entertain this suit and grant the relief requested absent the consent of the State of Louisiana.[3] We have concluded that the motion, submitted to the court for adjudication on the memoranda of counsel, should be granted.

Under the combined impact of decisions of the coordinate state and federal courts of Louisiana, the Department and its predecessor bodies have been characterized uniformly as legal entities separate from the State, possessing "citizenship" status for purposes of federal diversity of citizenship jurisdiction, and not shielded by the Eleventh Amendment, which affords immunity from suit in federal court to the several states and their less autonomous governmental units.[4] In considering the motion *sub judice*, we are required to determine whether the State of Louisiana, under the more recent decision in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), is the "real party in interest" in the context of the Eleventh Amendment and whether this suit, as a consequence, is prohibited by the Constitution of the United States.

The development of the "real party in interest" rule under the Eleventh Amendment is outlined in *Edelman v. Jordan*, supra, 415 U.S. at 662–63, 94 S.Ct. at 1355–56 [citations omitted]:

> . . . Unchanged since [its passage], the Amendment provides:
>
> > "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
>
> while the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State. It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. In *Ford Motor Co. v. Department of Treasury*, the Court said:
>
> > "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its

3. Reliance Insurance Company, which intervened in C.A. 76–2733 to recover compensation benefits allegedly paid as compensation insurer of decedent, also filed its separate suit, C.A. 76–2741, against the Department to recover such benefits. Reliance and the Department have agreed that the Court shall consider that the issues raised by the Department's Motion to Dismiss filed in C.A. 76–2733 are raised in C.A. 76–2741 and that in the latter action Reliance adopts as its opposition to said motion the arguments and memoranda submitted by Usry in C.A. 76–2733 and the Department adopts its arguments and memoranda submitted in support of its motion in C.A. 76–2733.

4. *See Saint v. Allen*, 172 La. 350, 134 So. 246 (1931) (Highway Commission is a separate entity from the state.). *Farnsworth v. Louisiana Highway Comm'n*, 8 F.Supp. 11 (W.D.La.1934) (construction contract) (Highway Commission is a "citizen" for purposes of diversity jurisdiction.), *citing State Highway Comm'n of Wyoming v. Utah Const. Co.*, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 362 (1928), *and affirmed* 74 F.2d 910 (5 Cir. 1975), *cert. denied* 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259. *Department of Highways v. McWilliams Dredging Co.*, 83 F.Supp. 132 (W.D.La.1949) (collision damages) (Department of Highways is a "citizen" for purposes of diversity jurisdiction.). *Department of Highways v. Morse Bros. & Assoc.*, 211 F.2d 140 (5th Cir. 1954) (contract) (Department of Highways is a "citizen" for purposes of diversity jurisdiction.). *Schultz v. Greater New Orleans Expressway Comm'n*, 250 F.Supp. 89 (E.D.La. 1966) (personal injury) (Louisiana's Eleventh Amendment immunity unavailable to Causeway commission, a separate entity from the State.). *Belle Fontaine Towing Co. v. Department of Highways*, 271 F.Supp. 60 (E.D.La. 1967) (collision damages) (Louisiana's Eleventh Amendment immunity unavailable to Highway Department, a separate entity from the State.), *citing Kallenberg v. Klause*, 162 So.2d 73 (La. App.1964), *writ refused* 246 La. 356, 164 So.2d 354 (warranty in title) (Department of Highways is a separate entity from the State.). *Southern Bridge Co. v. Department of Highways*, 319 F.Supp. 948 (E.D.La.1970) (construction contract) (Louisiana's Eleventh Amendment immunity unavailable to the Department of Highways, a separate entity from the State.).

sovereign immunity from suit even though individual officials are nominal defendants."

Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.

The *Edelman* Court held that the Eleventh Amendment prohibited an award of welfare benefits withheld by the administering state officials in a manner later determined to be wrongful. "Such an award was found to be indistinguishable from a monetary award against the State itself which was prohibited in *Ford Motor Co. v. Department of Treasury* [citation]. It therefore was controlled by that case rather than by *Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] [citation], which permitted suits against state officials to obtain prospective relief against violations of the Fourteenth Amendment." [5] Rejecting a description of this retroactive award of monetary relief as a form of "equitable restitution," the *Edelman* Court observed that the award "is in practical effect indistinguishable in many aspects from an award of damages against the State. It will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were defendants in the action. It is measured in terms of monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." [6]

In *Hander v. San Jacinto Junior College*, 519 F.2d 273 (5 Cir. 1975), the court affirmed an award of back salary for a teacher wrongfully discharged by a public junior college in Texas, "bypassing" [7] an Eleventh Amendment challenge made by the college on appeal. Although the court conceded

that the award was to be considered "retroactive" under the categories of relief established by *Edelman*, it found persuasive claimant's argument that, under Texas statutory and decisional law governing junior college districts, "such entities are not alter egos of the state but are primarily local institutions, created by local authority and supported largely by local revenues." [8] Having reviewed the development of the "real party in interest rule," the court observed:

> . . . Yet this same line of cases which establishes that plaintiffs may not circumvent Eleventh Amendment immunity by suing an official or a governmental entity which, in effect stands in the shoes of the state itself, recognizes that mere "political subdivisions" of the state do not enjoy constitutional immunity. [citations]

In Eleventh Amendment cases, the question of whether or not the state is "the real party in interest" is one of federal law, but federal courts must examine the powers, characteristics and relationships created by state law in order to determine whether the suit is in reality against the state itself. [citation] An analysis of the statutory authority for establishing, funding, and operating junior college districts in Texas and state decisional law construing that authority reveals that these districts are, within the Eleventh Amendment context, independent political subdivisions not immune from suit. [9]

In its analysis, the court recognized that Texas supplemented the district's local funds by biennial appropriations, use of which was restricted for faculty and administrative salaries and instructional equipment and supplies, but noted that State law did not require that salaries (including, pre-

---

**5.** *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 2669, 49 L.Ed.2d 614 (1976).

**6.** *Edelman v. Jordan*, supra, 415 U.S. at 668, 94 S.Ct. at 1358.

**7.** *See Jagnanden v. Giles*, 538 F.2d 1166, 1173 (5 Cir. 1976).

**8.** *Hander v. San Jacinto Junior College*, supra, at 278.

**9.** *Id.* at 278–79.

sumably, the back pay requested) be paid from State rather than local funds.[10]

In *Jagnanden v. Giles*, supra, it was held that the rationale of *Hander* did not benefit resident alien plaintiffs seeking reimbursement of nonresident tuition and fee payments made to Mississippi State University and determined to have been unconstitutionally required. The status of the State of Mississippi, itself, as the "real party in interest" for Eleventh Amendment purposes was demonstrated by a review of the complex statutory scheme whereby the State, through budgeting and auditing devices, maintained control over the fiscal policies of the State board governing institutions of higher learning and, through the governing board, over the finances of Mississippi State University.[11] Announcing the principles to be applied in its Eleventh Amendment inquiry, the court stated: "It is enough that, in effect, the suit is against the state and any recovery will come from the state."[12]

■ The analytical framework which structures our determination in the instant action of whether or not the State of Louisiana is to be characterized, as a matter of federal law,[13] as the "real party in interest" and thus entitled to claim the protective shield of the Eleventh Amendment emerges from a synthesis of the holdings of *Edelman, Hander* and *Giles*. First, the relief must be categorized as "retroactive," representing "past misfeasance." Second, the direct source of funds to satisfy the requested judgment must be identified as the State treasury. Third, any State-imposed

requirement that an award be satisfied out of funds in the State treasury must be an outgrowth of the "offending" agency's overall dependency, including most importantly its fiscal dependency, upon the sovereign, as revealed by a review of the state statutory and decisional law pertaining to the agency's establishment, funding, and operation.

■ The relief sought by plaintiff herein clearly falls within the prohibited "retroactive" category established by *Edelman*, representing monetary liability which, at the trial on the merits, may be established to have accrued at the date of Mr. Usry's accident due to a past breach of a legal duty on the part of the Department.[14] Additionally, it is alleged by mover, and not disputed by the plaintiff, that Louisiana law requires that any judgment rendered herein will be payable only out of funds appropriated by the Legislature therefor.[15] Further, as indicated by our discussion below, an analysis of the relationship between the State, on the one hand, and, on the other, the Department and T&D, in its various evolutionary stages from the date of Mr. Usry's accident to the present, indicates that this requirement, constituting an invasion of public funds in the State treasury, is a true reflection of the Department's lack of overall, and most importantly fiscal, autonomy. We find, therefore, that the State of Louisiana is the "real, substantial party in interest" herein and thus able to avail itself, through the Department, of the immunity afforded the several States by the Eleventh Amendment of the Constitution of the United States.

---

**10.** *Id.* at 279.

**11.** *Jagnanden v. Giles, supra,* at 1172–76.

**12.** *Id.* at 1173.

**13.** *Hander v. San Jacinto Junior College, supra,* at 279.

**14.** *See Edelman v. Jordan, supra,* 415 U.S. at 668, 94 S.Ct. at 1358.

**15.** Section 35 of Article III of the Louisiana Constitution of 1921 (as amended by Act 621 of 1960, adopted November 8, 1960) contains a provision which states:

> No judgment against the State or any other public body shall be exigible, payable or paid except out of funds appropriated for payment thereof.

A similar provision is continued in Section 10(C) of Article XII of the 1974 Constitution, effective January 1, 1975, as follows:

> No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except out of funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.

Under the authority of Section 19.4 of Article VI of the Louisiana Constitution of 1921, which section was added to the Constitution in 1968[16] and made statutory by Section 16(A)(3) of Article XIV of the Louisiana Constitution of 1974,[17] the State Board of Highways,[18] or the Department of Highways,[19] acting through the Board or

**16.** Added by Section 1 of Act No. 693 of 1968, adopted November 5, 1968.

**17.** Implemented by Act No. 48 of 1975 (LSA-R.S. 48:76)(West Supp.1977), and amended by Section 1 of Act No. 291 of 1977 (LSA-R.S. 48:76)(West Supp.1978).

**18.** The Board of Highways was created by a 1952 amendment (Act No. 54 of 1952, adopted on November 4, 1952) to the 1921 Constitution, numbered Article VI, Section 19.1 and renumbered 19.2. The nine-member board consisted of the governor, who served *ex officio,* and eight additional members to be appointed by the governor, one from each of the State's Congressional Districts. The board was vested with the general control, management supervision and direction of the Department of Highways. This section of the 1921 Constitution was continued as a statute by Section 16(A)(3) of Article XIV of the 1974 Constitution, and was implemented by Section 1 of Act No. 151 of 1975. *See* LSA-R.S. 48:11, 48:51, 48:52, 48:71, 48:72, 48:74, 48:75, 48:91 and 48:111. The board was abolished and its powers, duties functions and responsibilities were transferred to the secretary of T&D on June 22, 1977. LSA-R.S. 36:509(F)(2) and 36:957(A) (West 1978 Special Pamphlet). Statutory provisions relating to the board's composition, compensation, meetings and powers, LSA-R.S. 48:71–75, were repealed by Section 3 of Act No. 291 of 1977.

**19.** The earliest ancestor of the Department of Highways was the Louisiana Highway Commission. It is described in *Saint v. Allen, supra,* 134 So. at 247:

The commission was created by Act No. 95 of 1921 (Ex.Sess.) in carrying out the provisions of section 19 of article 6 of the Constitution of 1921, relative to establishing and maintaining a system of hard surface state highways and bridges. . . . The first section creates the commission. The third section . . . provides that "the Commission shall be a body corporate and as such may sue and be sued, plead and be impleaded, in any Court of Justice." The sixteenth section provides that every contract for highway improvement, under the act, must be made in the name of the State of Louisiana, be signed by the state engineer and the other contracting party, and approved by the commission, and that no such contract shall be entered into, nor shall any such work be authorized, which will create a liability on the part of the state in excess of the funds available for expenditure under the terms of the act. Section eighteen provides that the cost of all highway and bridge construction, under the act, shall be paid out of the general highway fund, although local aid may be received. This fund, as appears from the thirty-fourth section of the act, consists of all moneys, dedicated to the construction and maintenance of highways and bridges of the state by the Constitution or the Legislature, and any moneys received from the federal government. In the twentieth section the act provides that the state, acting through the commission, may acquire by purchase, lease, or donation, and may operate gravel beds, shell or rock deposits, and the like.

The first "Department of Highways" was created by Act No. 47 of 1940. Section 4 of Act No. 4 of 1942, however, abolished both the 1940 Department and the Highway Commission and declared that the Department of Highways, as created by the 1942 Act, was their legal successor. Until June 22, 1977, the Department continued to enjoy all powers incident to corporations, with authority to sue and be sued, and were charged with duties substantially similar to those of the original Highway Commission (see LSA-R.S. 48:11, 48:13, 48:21 and 48:22 (West 1965 and West Supp.1977)). As previously noted, on June 22, 1977, the Department was abolished and its powers and duties were transferred to T&D (*see* n.1.).

The 1921 constitutional provisions which required the legislature to provide for the expenditure of the General Highway Fund and reimbursement therefrom to parishes for monies spent by them on the state highway system (LSA-Const. Art. VI, § 21) and delineated the sources of revenues of the Fund (LSA-Const. Art. VI, § 22) were repealed by the 1974 Constitution (Art. XIV, § 17) except to the extent those portions of the former § 22 of Art. VI were reenacted in or retained as statutes under the 1974 Constitution. LSA-Const. Art. VII, § 5 and Art. XIV, § 16, implemented by Section 1 of Act No. 384 of 1975 (*see* LSA-R.S. 47:1681, 47:1682, 47:1684, 47:1686, 47:1687(B), 47:1688, 47:1690(4) and 47:1691). Section 19 of Article VI of the 1921 Constitution, requiring that the legislature provide for a general highway fund, was continued as a statute by the 1974 Constitution but was later repealed by Section 1 of Act No. 83 of 1975.

The "Long Range Highway Fund," established by the 1921 Constitution as amended in 1955 (Act No. 141 of 1955, adopted November 6, 1956 and numbered Section 23 of Article VI), was continued in statutory form by Section 16(A)(3) of Article XIV of the 1974 Constitution (yet to be implemented by the legislative ac-

62

the Department's director,[20] was required to submit an annual budget to the governor, on the form prescribed by the commissioner of administration. Such budget was to form a part of the executive budget and was subject to review and recommendations by the legislative budget committee and submission to the legislature, in the same manner and under the same conditions as those fixed by law for the submission, review, and control of the budgets of the other budget units or spending agencies of the state. *See* LSA-R.S. 48:76(A) (West Supp.1977).[21] Further, the budgetary and fiscal operations of the Board or Department were placed under the control and supervision of and were made subject to review by the legislative budget committee and the commissioner of administration as any other budgetary operations of State budget units. *See* LSA-R.S. 48:76(B) (West Supp.1977). Additionally, it was mandated that the accounting procedures or system of accounting to be used by the Board or Department, insofar as practical, conform to and comply with the uniform accounting system prescribed by the commissioner of administration, under the governor's authority. *See* LSA-R.S. 48:76(C) (West Supp.1977). Finally, stating an intent to require that the Board or Department and

the financial and budgetary functions and operations thereof shall be governed by the same provisions of law applicable to other budgets and budgetary units of the State, the Legislature classified the Board or Department as a State budget unit. *See* LSA-R.S. 48:76(D) (West Supp.1977). The obligations of preparation and submission of annual budget proposals now fall to the secretary of T&D. LSA-R.S. 48:76, as amended by Section 1 of Act No. 291 of 1977 (West Supp.1978).[22]

No highway department has ever had the power to levy taxes. Although the Department (at least since 1968) and T&D (since its creation in 1977) enjoyed the power of borrowing money and issuing bonds, neither was or is able to issue bonds without pledging the full faith and credit of the State for the payment of the obligations thereby incurred.[23]

Thus, in their fiscal dependency on the State of Louisiana, the Department and T&D, at all times pertinent to this action, are indistinguishable from the university which was found to operate under the financial control of the State of Mississippi in *Jagnanden v. Giles,* supra. Neither the nature of the functions of the Department and T&D, i. e., "duties devolving primarily

tion) with the exception of any dedications contained therein.

**20.** The director, the executive officer of the Department, was appointed by the Board and exercised his powers of management under the supervision and control of the Board. *See* Section 19.2 of Article VI of the 1921 Constitution, continued as a statute, by the 1974 Constitution, Art. XIV, § 16(A)(3), LSA-R.S. 48:51 and 48:52 (West Supp.1977). Under LSA-R.S. 48:51 and 48:52 (West 1978 Special Pamphlet), the secretary of T&D in 1977 succeeded the director in position and function.

**21.** According to this provision, the manner and conditions were to be "in accordance with the provisions of Chapter 1 of Subtitle 1 of Title 39 of the Louisiana Revised Statutes of 1950 and all other applicable laws relating to and governing the budgets of the other budget units of the state." This chapter deals exclusively with "agencies" of the State, excluding by definition governing bodies of any local government or subdivision of the State. LSA-R.S. 39:2(1) (West 1968). Part II of the chapter, "Financial

Planning and Budgeting," contains directives relating to the preparation and submission of the State budget and specifying the availability, generally, of appropriations made in response to the budget requests. *See* LSA-R.S. 39:41 through 39:62 (West 1968 and West Supp. 1978).

**22.** Further directives pertaining to the budget planning and appropriation of the Department and T&D appear in LSA-R.S. 48:203, as amended by Section 1 of Act No. 342 of 1968, Section 1 of Act No. 305 of 1970, and Section 1 of Act No. 291 of 1977.

**23.** *See* Section 23.1(1)(a) of Article VI of the 1921 Constitution, added by Act No. 101 of 1961 (adopted November 6, 1962) and "continued as a statute" by Section 16(A)(3) of Article XIV of the 1974 Constitution (yet to be implemented by legislative action). *See Tugwell v. Board of Highways,* 228 La. 662, 83 So.2d 893 (1955) (discussing LSA-R.S. 48:27 (West 1965)).

upon the state," [24] nor their power "to sue and be sued" indicates,[25] in the face of such broad fiscal control, that the Department or T&D may be considered "independent" of the State for purposes of Eleventh Amendment immunity.[26]

Having concluded that the Department by nature possesses the right to assert the State's Eleventh Amendment immunity, we turn to the possibility that this right has been waived, explicitly or impliedly, insofar as suits against the Department or T&D are concerned.

■ Louisiana has effected a waiver of its traditional governmental immunity from suit.[27] However, it is established beyond question that a state may waive its traditional governmental immunity and, at the same time, retain its constitutional (Eleventh Amendment) immunity from suit in federal courts.[28] Such an explicit restriction, generally limiting actions against the State to State courts, was included in a 1960 amendment to the Constitution of 1921 [29] and was repeated in a 1960 statutory enactment.[30] Although the limiting language was not included in the 1974 constitutional provision covering "Suits Against the State",[31] the Legislature in 1975,[32] reenacted the prohibition against institution of suit in any but a State court.

■ The question of whether the State has impliedly waived its constitutional im-

---

**24.** *Saint v. Allen, supra,* at 249.

**25.** These factors apparently form the basis of State jurisprudence which characterized the various highway units as entities distinct from the sovereign for purposes of State law. *See Schultz v. Greater New Orleans Expressway Comm'n, supra,* at 91–92. The federal cases which have sustained jurisdiction over challenges based on lack of "citizenship" and Eleventh Amendment immunity (*see* n. 4) relied strongly, if not exclusively, on the State courts' characterization of the various highway units as the only parties able to stand in judgment. Although *Southern Bridge Co. v. Department of Highways, supra,* was decided after the Constitution of 1921 was amended to include Section 19.4 of Article VI (now LSA-R.S. 48:76, as amended), relating to the regulation and control of the Department's annual budget and subjecting the Department to the laws applicable to all other budget units of the State, the court apparently gave no consideration to the effect of the 1968 amendment in reaching the conclusion that the Department was unable to avail itself of Eleventh Amendment immunity.

**26.** We' note that the Department, in *Cheramie v. Tucker,* 493 F.2d 586, 587–88 (5 Cir. 1974), was regarded as an "arm" of state government and thus, like the State, *Muzquiz v. City of San Antonio,* 520 F.2d 993, 997 (5 Cir. 1975), is not to be considered a "person" within the meaning of 42 U.S.C. § 1983. *See, also, Reeves v. City of Jackson,* 532 F.2d 491, 495, n. 5 (5 Cir. 1976), indicating that current analysis may reveal that the defendant herein lacks "citizenship" status for purposes of federal diversity jurisdiction.

**27.** Article III, Section 35 of the 1921 Constitution, adopted in 1946, as amended by Act No. 621 of 1960 (adopted November 8, 1960), by its terms empowered the legislature to waive the state's "immunity from suit and from liability" by special or general laws or resolutions. This provision, read together with a clause of LSA-R.S. 48:22, which authorized the Department "to sue and be sued," was judicially interpreted by the Louisiana courts as a waiver of governmental immunity enjoyed by the Department prior to the adoption of the 1960 amendment to the 1921 Constitution. *See, e. g., Lambert v. Austin Bridge Co.,* 189 So.2d 752 (La.App. 1966). The waiver incorporated in the 1974 Constitution is more specific. Article XII, Section 10 provides: "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property." Section 33 of Article XIV of the 1974 Constitution limits the applicability of the waiver in Article XII, Section 10 to causes of action arising after the effective date of the new Constitution (January 1, 1975).

**28.** *See Smith v. Reeves,* 178 U.S. 436, 445, 20 S.Ct. 919, 922–23, 44 L.Ed. 1140 (1900); *Chandler v. Dix,* 194 U.S. 590, 591–92, 24 S.Ct. 766, 766–67, 48 L.Ed. 1129 (1904); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 465–66, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945); *Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 276–77, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959), *Martin v. University of Louisville,* 541 F.2d 1171, 1175 (6 Cir. 1976); *Schultz v. Greater New Orleans Expressway Comm'n, supra,* at 92–93.

**29.** La.Const. Art. III, § 35.

**30.** Section 5 of Act No. 27 of 1960, LSA-R.S. 13:5105 (West 1967).

**31.** La.Const. Art. XII, § 10.

**32.** Section 1 of Act No. 434 of 1975, LSA-R.S. 13:5106 (West Supp.1978).

munity must also be answered in the negative. In connection with our inquiry in this regard, we note that, during all times relevant to this action, both the Department[33] and T&D[34] were constituted as corporate entities with the attendant powers "to sue and be sued." Additionally, we note that the Department's earliest ancestor, the Louisiana Highway Commission, enjoyed corporate status and power to sue and be sued "in any Court of Justice."[35] The present and historical existence of these powers, however, fail to establish an implied waiver by the State of Eleventh Amendment immunity[36] under the strict standard enunciated in *Edelman v. Jordan,* supra, 415 U.S. at 673, 94 S.Ct. at 1360–61 [citations and footnote omitted]:

> In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." We see no reason to retreat from the Court's statement in *Great Northern Life Insurance Co. v. Read:* [322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121]
>
>> "[W]hen we are dealing with the sovereign exemption from judicial interference in the field of financial administration a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found."

Accordingly,

IT IS ORDERED that the defendant's Motions to Dismiss for Lack of Jurisdiction be granted and that judgment be entered herein dismissing the complaints in C.A. 76–2733 and C.A. 76–2741 at the cost of the respective plaintiffs therein and dismissing, as moot, the complaint in intervention in C.A. 76–2733 at intervenor's cost.

33. LSA-R.S. 48:13 (West 1965) (Department a "body politic and corporate"). LSA-R.S. 48:22 (West 1965) (Department empowered to "sue and be sued, implead, and be impleaded.")

34. LSA-R.S. 48:13 (West Supp.1978) (T&D a "body politic and corporate"); LSA-R.S. 36:501(A) (West 1978 Special Pamphlet) (T&D

a "body corporate with power to sue and be sued").

35. *See* n. 19.

36. *See Martin v. University of Louisville, supra,* at 1174–76.